**UNITED STATES of America,
Petitioner,**

v.

**Billie Pirner GARDE, Respondent,**

and

**Government Accountability Project,
Intervenor–Respondent.**

**Misc. No. 87–274.**

United States District Court,
District of Columbia.

Oct. 27, 1987.

Mark Nagle, Asst. U.S. Atty., Washington, D.C., for petitioner.

Marya C. Young, Thomas J. Mack, Jones, Mack, Delaney & Young, Washington, D.C., for respondent.

Patti Goldman, Public Citizen Litigation Gr., Washington, D.C., for Government Accountability Project.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The United States of America petitions to enforce a Nuclear Regulatory Commission subpoena to compel an attorney for the Government Accountability Project, Billie Pirner Garde, to disclose any and all information, including client identities, in her possession concerning the safety of a nuclear power project in Texas. The Court finds that the subpoena is not narrowly drawn to avoid unnecessary abridgement of constitutionally protected associational rights. Accordingly, the petition shall be denied.

### FACTS

The Governmental Accountability Project (GAP) is a nonprofit organization which has been an advocate on behalf of "whistleblowers" on safety-related issues at various nuclear power projects. In the past, GAP has been able to reach accommodations with the Nuclear Regulatory Commission (NRC) permitting safety information and allegations in GAP's hands to reach appropriate government officials.

Ms. Garde, the respondent, is an attorney and director of the Midwest Office of GAP. On January 20, 1987, she wrote a letter to Victor Stello, Jr., the NRC's Executive Director for Operations, and to Texas Attorney General James Mattox stating that GAP had begun investigating worker allegations concerning the safety of the South

Texas Project, a nuclear plant nearing completion southwest of Houston, Texas. The letter stated that GAP represented or was working with 36 current or former employees at the plant. The letter stated:

> Once our preliminary investigation is complete, we plant to issue a formal public report. Unfortunately, in the interim, we cannot advise our clients or those we work with to provide their concerns to the Region IV office of the NRC. Our experience has been (and recently released internal agency reports confirm) that the Arlington office is either unable or unwilling to comply with its regulatory requirements as outlined in governing agency procedures.

> Thus, unless the NRC is willing to provide independent inspectors to process the allegations pursuant to internal NRC regulations, GAP will provide the allegations directly to the state Attorney General office, and/or to the appropriate congressional committees, and/or to other regulatory or municipal bodies which have an interest in ensuring that the South Texas plant is designed, constructed, and financed in a manner that protects the public.

An exchange of letters followed between Ms. Garde and Mr. Stello, who insisted that Region IV was the proper forum for GAP's information and expressed his unreserved confidence in that office. The tone of the letters, never lofty, deteriorated rapidly. Ms. Garde accused Mr. Stello of "bureaucratic posturing" and declared that "we would be irresponsible if we led more whistleblowers blindly to the slaughterhouse of your Arlington office." Mr. Stello replied with a one-paragraph reminder that "NRC is the responsible federal agency for ensuring that safety significant views are appropriately addressed." And so on, until the final letter from Mr. Stello, which carried a warning that "if we do not receive full information on the allegations within 30 days we will be constrained to take steps to acquire it by other means."

Those "other means" were a subpoena, signed by Mr. Stello on May 20, 1987, ordering Ms. Garde to testify and produce documents regarding the South Texas allegations on May 26, 1987. The subpoena, the first ever directed at GAP by the NRC, was issued pursuant to 42 U.S.C. § 2201(c) (1982) and stated:

> YOU ARE HEREBY COMMANDED to appear at Room 6507, Nuclear Regulatory Commission, 7735 Old Georgetown Road, Bethesda, Maryland on the 26th day of May 1987 at 9:00 o'clock A.M. to continue as necessary for the purpose of testifying before NRC personnel concerning allegations of current and/or former employees of the South Texas Project concerning the safety of the South Texas Project, as described in your letter of January 20, 1987 to Messrs. Victor Stello and James Mattox, and any other allegations which you have received concerning the safety of the South Texas Project, and to provide any records or other documents in your possession or under your custody or control concerning such allegations.

Before May 26, attorneys for Ms. Garde and the NRC agreed to postpone the deposition while Ms. Garde moved the full Commission to quash the subpoena. On July 15, 1987, the Commission denied the motion to quash, and on July 27 and August 5, 1987, Ms. Garde testified. During the deposition she furnished some information but refused to provide either the substance of the allegations or the names of those who made them, claiming the information was protected by the attorney-client privilege and work product doctrine.

On August 14, 1987, the government filed this petition to enforce the subpoena under 42 U.S.C. § 2281 (1982), which allows the district court to order testimony and production of documents and to punish failure to obey such an order as contempt. GAP was allowed to intervene in the case, and Houston Lighting & Power Co., which is building the South Texas plant, was permitted to brief the issues as amicus curiae.

## DISCUSSION

Ms. Garde and GAP raised a number of challenges to the subpoena. In its papers and at oral argument, the government cast the subpoena in somewhat narrower terms and advised the Court that it would consid-

er the subpoena satisfied if Ms. Garde disclosed the identity of her clients and other informants.[1] However, the government also advised that if the identities were not forthcoming it would have no alternative but to seek enforcement of the subpoena as drafted. The Court shall evaluate the subpoena on its face as no effort has been made to formally amend its terms.

Ms. Garde and GAP submit that compelled disclosure of GAP's informants would have a crippling effect on the organization's efforts on behalf of whistleblowers to present their safety concerns to the NRC and to the public. The government acknowledges that GAP has served a beneficial role in the past, and denies any interest in harming GAP or choking off the flow of allegations and information through it.

Ironically, both the NRC and GAP claim the same ultimate aim—to see that nuclear safety allegations are fully investigated so the public may be protected. It is lamentable that for whatever reason (and a personality clash and overheated rhetoric appear to be prime suspects) the NRC and GAP have been unable to work out their differences. Both sides have shown a tendency to overplay their hands—the NRC because it cast its subpoena too broadly without fully exploring alternative means of obtaining the information, GAP because it is clear that under the appropriate circumstances its First Amendment rights would give way to the compelling government interest in nuclear safety. Ms. Garde's counsel said at oral argument that *any* enforcement of the subpoena, no matter how carefully tailored to protect privileges or constitutional rights, would send a message to whistleblowers that GAP was not a safe harbor. Ms. Garde and GAP would be ill-advised to consider the outcome of this case as granting them any immunity from NRC subpoenas or endorsing their attempt to dictate how NRC conducts its affairs.

In a series of cases beginning with *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court has held that, absent a compelling government interest, an organization could not constitutionally be compelled to identify the names of its members, agents, contributors, or recipients of contributions if it could be demonstrated that such disclosure would subject those identified to harassment or retaliation by virtue of their association. The Supreme Court recognized that First Amendment associational rights extend to litigation in *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963). In that case, the Court struck down a Virginia ban on the solicitation of prospective litigants for the purpose of advancing the lawful objectives of the NAACP and the NAACP Legal Defense and Education Fund, Inc. The Court held that litigation is a form of political expression deserving of full First Amendment protections. *Id.* at 429, 83 S.Ct. at 335.

The Court elaborated on the protections announced in *Button* in a subsequent case, *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). The Court held that South Carolina could not constitutionally punish for solicitation an American Civil Liberties Union lawyer who advised people of their legal rights, offered free legal assistance, and made referrals for legal assistance in order to further political and ideological goals. The Court found that the ACLU "engages in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *Id.* at 431, 98 S.Ct. at 1904.

---

1. It appears from disclosures made during deposition and from affidavits filed in this proceeding that Ms. Garde claims 56 sources of information for roughly 600 allegations. About 46 of those individuals are within the scope of the NRC subpoena. Of those 46 individuals, 24 are "clients" and 22 are "witnesses." Because of parallel proceedings before the Department of Labor, the identity of about 16 of the clients has been disclosed to the NRC. One other client's identity is known to the NRC, so the identity of seven clients remains confidential.

While the Court finds it unnecessary to reach the merits the lawyer-client confidentiality issue, it does consider Ms. Garde's argument substantial under the line of cases that begins with *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960), and includes *NLRB v. Harvey*, 349 F.2d 900 (4th Cir.1965), where it was recognized that the identity of a client may be privileged "when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication." 349 F.2d at 905.

It is beyond dispute that the legal activities engaged in by Ms. Garde and GAP serve as a vehicle for political expression and association. The government argues, however, that the disclosure mandated by the NRC subpoena would not infringe on constitutional protections because GAP, its members, and those who associate with it would be exposed to *no harm* by the disclosure. The NRC promises that the information will be kept confidential,[2] subject only to its statutory obligations.

Ms. Garde and GAP argue that unenforceable promises are not worth much in the face of the track record of the NRC and particularly its Region IV office for leaking information provided in confidence. Be that as it may (the Court earlier denied a request for discovery and an evidentiary hearing on the good faith of Mr. Stello and the NRC), the plain fact is that GAP's informants have chosen not to go to the authorities directly with their complaints. Indeed, one of Ms. Garde's clients is said to be an NRC employee who was not satisfied with the way the agency handled information furnished directly to it in the first instance. It is not unreasonable to infer from the fact that these whistleblowers have gone to GAP that they do not wish their identities disclosed to the government without pledges of confidentiality acceptable to them. The Court is not much impressed by the government's argument that employees should not worry because federal law, 42 U.S.C. § 5851 (1982), prohibits retaliation against whistleblowers.

From this point it is but a short step to the conclusion that if the government is successful in compelling Ms. Garde to reveal the information given to her, especially the identity of those she represents, GAP will lose the confidence of some of its whistleblower informants and its efforts to gather and present safety allegations will suffer. This is the harm that GAP claims, and it is cognizable under the right to association.

The First Amendment bars this infringement on constitutionally protected rights unless the government can show a compelling interest that cannot be served by alternative means. The interest in nuclear safety is no doubt compelling, and it is not contested in this case. The question is whether alternative means of obtaining the information sought from Ms. Garde are available to the NRC. The agency understandably has resisted Ms. Garde's demand to set the terms and conditions of disclosure, especially on the issue of whether Mr. Stello will be shut off from the information and the investigation of it.

However, it is not necessary to address the reasonableness or propriety of the various alternative means of acquiring the information propounded by Ms. Garde and GAP. The burden of demonstrating a lack of alternative means is on the government, *e.g., In re Primus*, 436 U.S. at 432, 98 S.Ct. at 1904 (government must show that means closely drawn to avoid unnecessary infringement of associational rights), and the government has not satisfied this Court that it has explored alternatives to the use of compulsory process to obtain the information sought. This conclusion is reinforced by the broad sweep of the subpoena, which encompasses all "allegations you have received concerning the safety of the South Texas Project" and "any records or other documents in your possession or under your custody or control concerning such allegations."

The NRC cannot cast with such a wide net when constitutional freedoms are at stake. Alternatives minimizing the intrusion on associational rights must be carefully and conscientiously explored before resort may be had to the court's process.

---

2. Ms. Garde and GAP argue without contradiction that the NRC's pledge of confidentiality is not enforceable. They cite *McDermott v. NRC,* Civil Action No. 85–1082, slip op. at 5 (D.D.C. Apr. 26, 1985), where Judge Johnson ruled that a similar promise of confidentiality could not be enforced by mandamus. "As an internal operating procedure or managerial tool designed to aid the exercise of the NRC's independent discretion, DCAMP [Diablo Canyon Allegation Management Program] is not enforceable in a private civil suit." *Id.*