*Affirmed in part, reversed in part, and remanded. No costs.*

**UNITED STATES of America, Petitioner, Appellee,**

v.

**Stephen B. COMLEY, Respondent, Appellant.**

No. 89–1680.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1989.

Decided Nov. 29, 1989.

Ernest C. Hadley, Wareham, Mass., for respondent, appellant.

Paul G. Levenson, Asst. U.S. Atty., Somerville, Mass., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for petitioner, appellee.

Before BOWNES, BREYER and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from an order of the district court enforcing an administrative subpoena served on appellant Stephen B. Comley by the Nuclear Regulatory Commission ("NRC" or "Commission"). The subpoena seeks tape recordings or transcripts prepared by Comley of telephone conversations between Comley and an NRC employee who is the subject of an NRC investigation. Comley challenges the Commission's authority to issue the subpoena and also contends that the subpoena violates his first amendment right to freedom of association. For the reasons discussed below, we affirm the district court's order enforcing the subpoena.

## I. BACKGROUND

In August, 1988, the NRC's Office of Inspector and Auditor ("OIA") received allegations that an employee in the NRC's Office of Investigations ("OI") had committed various acts of misconduct. The allegations were made by Douglas Ellison, a former employee at the Nine Mile Point nuclear power facility in Lycoming, New York. Ellison claimed, among other things, that the NRC employee had disclosed confidential NRC information to appellant Comley, a private citizen.

Ellison provided the OIA with a tape recording of two conversations that allegedly took place between the NRC employee and Comley. Administrative Judge Alan Rosenthal, who was placed in charge of the NRC's investigation, reviewed the tape and concluded from it that the NRC employee may have disclosed confidential NRC information to Comley and may also have failed to disclose to other NRC officials relevant information that he had received from Comley. Based on Ellison's statement that Comley may have recorded as many as fifty conversations between himself and the employee, the Commission issued a subpoena *duces tecum* to Comley for tapes of conversations between himself and the employee, or transcripts of such conversations. Comley moved the Commission to quash the subpoena, but this motion was denied. After Comley gave notice of his refusal to comply with the subpoena, the United States petitioned for enforcement in federal district court. Following a hearing, the district court entered an order enforcing the NRC's subpoena. The court concluded that the subpoena was regular on its face, issued for valid purposes, and not violative of Comley's first amendment right to freedom of association. Comley now appeals that decision.[1]

---

**1.** At oral argument, we raised several questions concerning our jurisdiction to consider Comley's appeal from the enforcement order. The questions focused on whether it was proper for Comley to appeal from the enforcement order or whether he could appeal only from a contempt adjudication. Further examination has persuaded us that jurisdiction does exist to consider an appeal from the enforcement order. "[O]rders compelling testimony or production

## II. STANDARDS GOVERNING THE ENFORCEMENT OF SUBPOENAS

In general, an agency subpoena is enforceable if it is for a proper purpose authorized by Congress, the information sought is relevant to that purpose and adequately described, and statutory procedures are followed in the subpoena's issuance. *See, e.g., United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *United States v. Tivian Laboratories, Inc.,* 589 F.2d 49, 54 (1st Cir.1978), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2884, 61 L.Ed.2d 312 (1979). The role of a court in a subpoena enforcement proceeding is strictly limited to inquiring whether the above requirements have been met. "Such proceedings are designed to be summary in nature. As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." *EEOC v. Tempel Steel Co.,* 814 F.2d 482, 485 (7th Cir.1987) (citations omitted); *see also FTC v. Monahan,* 832 F.2d 688, 689 (1st Cir.1987), *cert. denied,* 485 U.S. 987, 108 S.Ct. 1289, 99 L.Ed.2d 500 (1988); *United States v. Westinghouse Elec. Corp.,* 788 F.2d 164, 166 (3d Cir.1986); *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 475–76 (4th Cir.), *cert. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986). Furthermore, the affidavits of government officials have been accepted as sufficient to make out a prima facie showing that these requirements are satisfied. *See United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 391–92 (1st Cir.1988); *Kerr v. United States,* 801 F.2d 1162, 1163–64 (9th Cir.1986).

Measured against these general standards, the NRC has made an adequate

of evidence in what may properly be regarded as independent proceedings are appealable without the requirement of a contempt adjudication. This rule is regularly applied in proceedings where evidence is sought by administrative agencies." *Mount Sinai School of Medicine v. American Tobacco Co.,* 866 F.2d 552, 554 (2d Cir.1989); *see also* 9 Moore's Federal Practice ¶ 110.13[2], at 157–58 (1989).

prima facie showing to support enforcement of its subpoena. First, the Commission has articulated a proper purpose for issuing the subpoena. Congress has vested the NRC with the authority to issue subpoenas in conjunction with investigations that the NRC deems necessary to protect public health or to minimize danger to life or property in matters involving nuclear materials. 42 U.S.C. § 2201(c) (1982). It is precisely this objective of protecting public health and safety that the Commission has given as one of the purposes underlying its subpoena of the tape recordings at issue. The affidavit of Administrative Judge Rosenthal states that the information he has reviewed thus far leads him to suspect that the NRC employee under investigation may have received relevant information from Comley that NRC regulations required him to report to his superiors. Specifically, an NRC regulation requires OI employees to keep NRC officers currently apprised of information received that pertains to public health and safety in matters involving nuclear materials. 10 C.F.R. § 1.27(f) (1989). If the NRC employee under investigation received such information from Comley and failed to relay it to his superiors, such misconduct clearly implicates the effective functioning of the NRC in its duty to protect public health and safety. A subpoena issued as part of an investigation into such alleged misconduct thus is supported by a proper agency purpose.

The Rosenthal affidavit also states that the information reviewed thus far indicates that the NRC employee may have divulged confidential NRC information to Comley. Depending on the information involved, this conduct might compromise the security of certain nuclear power facilities in the country. For this reason as well, the Commission's investigation implicates public health and safety concerns in nuclear matters and provides a proper purpose for the issuance of the challenged subpoena.

Having made a prima facie showing of proper purpose, the Commission then must show that the information sought by the subpoena is reasonably relevant to the purpose of the investigation, and that the sub-

poena itself is not too indefinite. There can be little doubt that the tape recordings sought by the subpoena are relevant to the purpose of the Commission's investigation. The Commission's objective is to uncover any misconduct relating to the NRC employee's conversations with Comley. The tape recordings of these conversations certainly are relevant to this investigation. Second, the subpoena itself is not too indefinite. It specifically requests tape recordings or transcripts of tape recordings of conversations between Comley and the NRC employee. There is little that is indefinite in this request. We thus find that the NRC has made an adequate prima facie showing to support enforcement of its subpoena.

## III. CHALLENGES TO ENFORCEMENT OF THE SUBPOENA

Comley challenges the subpoena's enforcement on two grounds. First, he contends that the Commission lacked authority to issue the subpoena. Second, even if the Commission had authority, Comley argues that the subpoena's enforcement would violate his first amendment right to freedom of association. We consider each of these arguments in turn.

### A. Commission's Authority to Issue Subpoena

Comley's challenge to the Commission's authority to issue the subpoena essentially is a challenge to the Commission's professed "public health and safety" motivations for investigating the NRC employee in question. Comley contends that the Commission is motivated only by bad faith in its investigation of the employee. He alleges that there is some sort of vendetta within the NRC to get rid of this employee, and that it is this vendetta rather than any concern for public health and safety that is motivating the investigation.

If Comley's assertions were supported by firm evidence, then we would have adequate justification to deny enforcement of the subpoena. "[I]f a subpoena is issued

for an improper purpose, such as harrassment [sic], its enforcement constitutes an abuse of the court's process." *United States v. Westinghouse Elec. Corp.*, 788 F.2d at 166–67. Comley, however, has produced no firm evidence of such abuses. True, he has made forceful allegations about the bad faith of certain NRC officials. These officials, though, are no longer involved in the investigation. Administrative Judge Rosenthal is now conducting the investigation, and Comley has made no assertions questioning Rosenthal's impartiality. In the absence of firm evidence of bad faith, it is not our role "to intrude into the investigative agency's function." *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir.1975).

 Comley has asked for discovery and an evidentiary hearing to explore more thoroughly the issue of the Commission's bad faith. The district court denied this request and we affirm the denial. " 'Except in extraordinary circumstances ..., discovery is improper in a summary subpoena enforcement proceeding.' " *FTC v. Carter*, 636 F.2d 781, 789 (D.C.Cir.1980) (quoting *United States v. Exxon*, 628 F.2d 70, 77 n. 7 (D.C.Cir.1980)). Such requests "are not looked upon favorably ...; nor are appellate courts inclined to reverse the denial of discovery by a district judge for anything but an abuse of discretion." *Id.; see also United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142, 1146–47 (D.C. Cir.1987); *United States v. Merit Petroleum, Inc.*, 731 F.2d 901, 905–06 (Temp. Emer.Ct.App.1984); *In re EEOC*, 709 F.2d 392, 400 (5th Cir.1983). Comley has made no argument sufficient to support a determination that the court below abused its discretion in denying the discovery request. At best, he has made allegations about a

vendetta being pursued by certain NRC officials. Because these officials are no longer involved in the investigation, we do not find the allegations sufficiently weighty to cast doubt on the proper objective of "public health and safety" stated by Administrative Judge Rosenthal in his affidavit to be the motivation for the subpoena.[2]

### B. *Freedom of Association*

Comley's final challenge to the NRC's subpoena is that enforcement of the subpoena would infringe on his first amendment right to freedom of association. Comley is the founder and director of a non-profit corporation that monitors and investigates the operation and construction of nuclear power plants and frequently criticizes the activities of the NRC. Comley claims that relinquishing the tape recordings sought in the subpoena would result in the "detailed disclosure of organizational activities, the identities of individuals that either belong to or associate with the organization and Mr. Comley, and likely expose those persons and others who have provided information to Mr. Comley to retaliation by their employers, the Commission and others." Brief for Appellant at 32.

In a line of cases beginning with *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court has held that compelling a private organization to reveal the identities of its members where such disclosure will result in the harassment of existing members and the discouragement of new members can constitute a violation of the right to freedom of association. *See id.* at 462, 78 S.Ct. at 1171; *see also Buckley v. Valeo*, 424 U.S. 1, 64–65, 96 S.Ct. 612, 656, 46 L.Ed.2d

2. In addition to the justification of protecting health and safety, the NRC also claims that it has the authority to issue subpoenas in the course of investigating employee misconduct, even if such misconduct does not directly implicate public health and safety. Comley challenges this assertion, arguing that the Civil Service Reform Act of 1978 preemptively establishes the procedures that agencies may employ in disciplinary proceedings, and that this Act does not provide for the issuance of subpoenas in investigations of employee misconduct. We

need not consider this issue because of our conclusion that the employee misconduct alleged here does implicate public health and safety concerns. The possibility that the NRC employee failed to relay to his superiors relevant information received from Comley or that he passed on to Comley confidential information pertaining to plant security obviously implicates public health and safety, and thus furnishes proper justification for the agency's use of its subpoena power.

659 (1976); *Bates v. Little Rock*, 361 U.S. 516, 523, 80 S.Ct. 412, 416, 4 L.Ed.2d 480 (1960). To establish such a violation, the target of a subpoena must make a prima facie showing of a first amendment infringement—typically, that enforcement of the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of associational rights. Once such a showing is made, the burden then shifts to the government to show both a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information. *See Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir.1988); *see also NAACP v. Alabama*, 357 U.S. at 463, 78 S.Ct. at 1172; *Federal Election Comm'n v. Larouche Campaign*, 817 F.2d 233, 234–35 (2d Cir.1987); *Federal Election Comm'n v. Machinists Non–Partisan Political League*, 655 F.2d 380, 389 (D.C.Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981).

▮ Applying this framework, we conclude that Comley has failed to make out an adequate claim that enforcement of the subpoena would violate his right to freedom of association. First, we have reservations about the strength of the first amendment concerns implicated by the challenged subpoena. Unlike the disclosure requirements involved in the majority of the cases we have reviewed, the subpoena issued by the NRC does not directly require the disclosure of the identities of Comley's associates or informants. *See, e.g., Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 88, 103 S.Ct. 416, 418, 74 L.Ed.2d 250 (1982) (challenged statute required that the identities of campaign contributors be disclosed); *Federal Election Comm'n v. Machinists Non–Partisan Political League*, 655 F.2d at 389 (agency sought a list of all members and volunteers of political organization); *Federal Election Comm'n v. Larouche Campaign*, 817 F.2d at 234 (agency sought a list of campaign contributors); *see also United States v. Garde*, 673 F.Supp. 604, 605–07 (D.D.C.1987) (finding cognizable

first amendment interests where an NRC subpoena sought all records and documents pertaining to allegations of safety violations and the government acknowledged that the subpoena encompassed the identities of clients and other informants), *appeal dismissed*, 848 F.2d 1307 (D.C.Cir. 1988). Rather, in subpoenaing only the tape recordings, the NRC is seeking to discover the substance of the information that passed between Comley and the NRC employee, not the identities of the informants or associates who may have been involved in obtaining this information. We recognize that the potential exists for the disclosure of certain identities to be an incidental consequence of enforcement of the subpoena, but the magnitude of the first amendment concerns seems less to us in this context, where the extent of any disclosure of identities is speculative and is not the specific objective of the government subpoena. *Cf. In re Grand Jury Proceedings*, 633 F.2d 754, 757 (9th Cir. 1980) (upholding a grand jury subpoena of an association's tax returns, reasoning that although some identities might be revealed, the subpoena was narrowly tailored to the purpose of investigating possible tax violations and stopped short of requesting lists of people attending the association's meetings).

Furthermore, for the most part, Comley has made only general allegations concerning the harassment or harm that will result to his associates if their identities indeed are revealed by the tape recordings. These general allegations of harassment fall short of the solid, uncontroverted evidence of actual harassment that has existed in those cases where the Supreme Court has found violations of the right to freedom of association. *See Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. at 98–102, 103 S.Ct. at 423–25; *NAACP v. Alabama*, 357 U.S. at 462–63, 78 S.Ct. at 1171–72; *see also Buckley v. Valeo*, 424 U.S. at 69–72, 96 S.Ct. at 658–60 (finding no solid showing of harassment and consequently rejecting freedom of association claims). *But see In re Grand Jury Proceeding*, 842 F.2d 1229, 1236 (11th Cir.1988) (raising the possibility that *Buckley*'s re-

quirement of showing solid evidence of actual harassment should be relaxed when the challenged government investigation is targeting a particular group).

■ Even assuming, however, that Comley has made an adequate prima facie showing of protectable first amendment interests, we must reject Comley's first amendment challenge to the subpoena. We reject the challenge because of our conclusion that the government has adequately shown both a compelling interest in obtaining the material sought and that no significantly less restrictive alternatives exist. The requirement of a compelling interest is met by the NRC's mission to promote nuclear safety. *See United States v. Garde,* 673 F.Supp. at 607. The requirement that no significantly less restrictive alternatives exist is satisfied by the narrowness with which the subpoena here is drawn. This is not an instance where the NRC is seeking any and all information possessed by Comley concerning nuclear safety violations. *See United States v. Garde,* 673 F.Supp. at 607 (holding that such a broad request is violative of the requirement that no less restrictive alternatives exist). Nor has the NRC issued a blanket request for the identities of all of Comley's associates and informants. Rather, the NRC only is seeking tape recordings of a limited number of conversations that took place between two specified individuals. Because of the narrow specificity of the materials sought by the subpoena and the fact that there are no apparent reliable means of otherwise obtaining the information, we are satisfied that there are no significantly less restrictive alternatives available to the government. We, therefore, reject Comley's freedom of association challenge to the enforcement of the subpoena. *Cf. In re Grand Jury Proceedings,* 633 F.2d at 757 (upholding a grand jury subpoena of an association's tax returns, reasoning that the narrowness of the subpoena together with the government's compelling interest in enforcement of the tax laws outweighed any first amendment rights implicated by the incidental disclosure of member identities); *In re Grand Jury Proceeding,* 842 F.2d at 1236–37 (up-

holding a subpoena of tax records); *St. German of Alaska E. Orthodox Catholic Church v. United States,* 840 F.2d 1087, 1094 (2d Cir.1988) (upholding IRS summonses against a free association challenge).

## IV. CONCLUSION

The Commission has made an adequate prima facie showing that its subpoena was issued for an authorized purpose, and that the information sought is relevant to that purpose and adequately described. We find Comley's allegations of bad faith to be insufficient to overcome this showing or to require discovery and an evidentiary hearing. Finally, with respect to the freedom of association challenge, we have reservations about the strength of the first amendment concerns implicated by the subpoena. Even assuming a prima facie showing of sufficient first amendment concerns, however, we conclude that the government has a compelling interest in the material sought and that there are no significantly less restrictive alternatives available. The district court's order enforcing the Commission's subpoena is therefore Affirmed.