[No. B086213. Second Dist., Div. One. Apr. 11, 1995.]

KIMBERLY GONZALEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF SAN FERNANDO et al., Real Parties in Interest.

**COUNSEL**

Carol A. Sobel, Paul L. Hoffman, Sharon M. Robinson and John R. White for Petitioner.

No appearance for Respondent.

Ochoa & Sillas and Jesse M. Jauregui for Real Parties in Interest.

## OPINION

**VOGEL (Miriam A.), J.**—We are called upon in this case to balance competing interests. On one side of the scale is a plaintiff's right to pursue a sexual harassment lawsuit uninhibited by concerns that her former employer will retaliate against other employees who are willing to help prove her case. On the other side is the employer's right to discover the identity of a presently unnamed person who stole evidence related to the plaintiff's lawsuit from the employer's files and gave it to the plaintiff. We hold that the plaintiff, to tip the scales in her favor, must present some evidence (not mere speculation) that her fear of retaliation is justified. In this case, the plaintiff's failure to present any proof at all compels a decision in favor of the employer.[1]

### FACTS

Kimberly Gonzalez worked for the City of San Fernando Police Department as a radio dispatcher. After she left, she sued the City, its chief of police and others employed by its police department, alleging sexual harassment.

According to the complaint, the "harassment arose out of the display . . . in the men's locker room of the police station of photographs of a semi-nude woman. . . ." The woman in the photographs bore a "striking resemblance to" Gonzalez and an officer asked Gonzalez why photographs of her were hanging in the men's locker room. Several days later, other officers commented to Gonzalez about the pictures and about the woman's resemblance to her.

Gonzalez asked the officers to get the pictures for her. They declined but a few days later she was told the photographs had been removed. "Some time after the photographs were taken down, [Gonzalez] received an envelope containing the two pictures." Gonzalez then filed a complaint with the Department of Fair Employment and Housing and notified her employer. No response was forthcoming, she alleges—no investigation was conducted and no one was disciplined. Instead, she was questioned about the identity of the person who had given her the photographs and complaints were lodged

---

[1]This case is before us on the employee's petition for a writ of mandate filed after the trial court ordered her to disclose the identity of the person who assisted her. When the petition was first filed, we summarily denied it, after which a petition for review was presented to the Supreme Court. The Supreme Court granted review, then transferred the matter to us with directions to issue an alternative writ. We complied and have now received further briefing and heard oral argument. Our opinion remains unchanged, however, and we once again deny the petition.

about her refusal to provide the requested information. Ultimately, she was given "an incomplete and adverse performance evaluation" because she refused to identify the person who gave her the photographs.[2] When Gonzalez challenged the evaluation, she was again questioned about the identity of her assistant and, again, threatened with disciplinary action if she did not reveal his identity. "Ultimately, she was compelled to leave her job on a stress disability when the department began to construct an effort to terminate and/or discipline her for failure to do her job properly."

Based on these allegations, Gonzalez sought general, special and punitive damages for sexual harassment in violation of various constitutional and statutory provisions and for the intentional infliction of emotional distress. Defendants answered the complaint and thereafter served Gonzalez with interrogatories which asked, among other things, for the identity of the assistant who handed her " 'an envelope containing the two photographs' as alleged" in her complaint. Gonzalez objected and refused to answer this interrogatory on the grounds that it sought "information which is privileged under the California Constitution, Article I, sec[tion] 1 (privacy), that the disclosure of such information would be contrary to the public policy of this state in that it would lead to retaliation for the disclosure of unlawful discrimination and that the information is not likely to lead to the discovery [of] relevant evidence, is cumulative and not necessary to the resolution of this case."

Defendants moved to compel an answer, explaining that the interrogatory properly sought the identity of a person who had knowledge of the facts giving rise to Gonzalez's claims and that Gonzalez's apparent concern that the other person might "be retaliated against" was pure speculation. Gonzalez opposed the motion and asked the trial court to protect the identity of her assistant for the same reasons stated in her objection to the interrogatory. In support of her opposition, Gonzalez submitted a memorandum (which she had obtained through her own discovery efforts) from the patrol commander to the chief of police (the contents of which are undisputed). As pertinent, the memo states:

---

[2]The person who gave the photographs to Gonzalez is not an "informant" or a "whistleblower." He (or she) did not provide information about another person's wrongdoing to anyone—not to Gonzalez (who already knew about the photographs) or her employer or a public agency or anyone else. As will appear, what he (or she) did was to steal the photographs from a detective's file and turn them over to Gonzalez. As will also appear, Gonzalez's failure to provide any evidence in support of her position means we do not even know if the person who gave her the photographs actually exists or, if the person does exist, whether he (or she) is a coworker or an outsider. For a shorthand designation, therefore, we refer to the person simply as Gonzalez's "assistant" and, for simplicity's sake, use the masculine when a personal pronoun is required.

"On Monday, January 18, 1993, Desk Officer Kimberly Gonzalez was given a direct order by myself to answer a question relevant to an investigation concerning a theft that had occurred from a file cabinet assigned to Sergeant David Harvey . . . . At the time Gonzalez did not want to answer the question and asked for time to seek legal assistance before answering the question. I gave Gonzalez until . . . today [January 22] to respond to the question or be subject to disciplinary action for failing to obey an order.

"[Today,] Gonzalez came into my office and [said] she wanted to tape record the conversation. While she was getting a tape recorder, I also got a tape recorder and recorded the conversation. [¶] . . . I summarized what had led to this point, and again told her that I was giving her an order to answer the question, 'Who took the photographs from Sergeant Dave Harvey's file cabinet and gave these photographs to you?'

"Gonzalez replied, 'The answer's the same. I'm not going to tell you who gave them to me.' . . .

"I asked her if she understood that she was refusing to obey an order, and she said, 'I understand perfectly.' . . .

"CONCLUSION

"In the course of [a] conversation with . . . Gonzalez . . . I became aware that she had photographs that had been taken from the file cabinet assigned to Sergeant David Harvey in the Watch Commander's office; further, that Gonzalez knew who had taken the photographs from the file cabinet and who gave the photographs to her. . . .

"The sergeants assigned to the Patrol Division share a common office, the Watch Commander's Office, with each sergeant having a file cabinet assigned for the purpose of maintaining their correspondence necessary to perform their job. In this instance, a supervisor had gone into the file cabinet of another supervisor and, in effect, stole evidence.[3] Not only did a theft occur, but the sergeant violated a basic trust that must exist among the sergeants that share the office. This is intolerable behavior. Gonzalez has direct knowledge of this act.

"San Fernando Police Department Manual of Policies and Procedures Section 10020.35, Compliance with Lawful Orders, states, [¶] The Department has [a] clearly defined hierarchy of authority. An officer must not

---

[3] We have no idea why the author of this memorandum assumes the photographs were taken by a supervisor.

question a superior's command. Such obedience is necessary for the safe and expeditious performance of law enforcement operations. The most desirable methods of obtaining compliance are recognition, reward, and positive encouragement; however, discipline may be imposed where orders, commands or directives are disregarded.

"Because she failed to obey an order, she is in violation of San Fernando Manual of Policies and Procedures Section 2-430.25, Legitimate Reasons for Disciplinary Action, subsection b) Failure to obey any order or directive, and Section 2-430.25, subsection gg) Failure to comply with all rules and regulations, general and specific orders, policies and procedures of the Department, written or verbal orders of a superior.

"RECOMMENDATION

"That Desk Officer Kimberly Gonzalez be disciplined for violation of section 2-430.25, subsections b) and gg)."

Gonzalez's opposition papers were not, however, supported by a declaration from her or from her assistant or anyone else (other than her attorney, whose declaration did no more than authenticate the memorandum quoted above) and there is no explanation for the basis of her concern about retaliation against her assistant if his identity is disclosed.

The trial court granted defendants' motion and ordered Gonzalez to answer the interrogatory. These writ proceedings followed.

## DISCUSSION

Gonzalez claims she should not be required to disclose the identity of her assistant because his privacy as a "whistleblower" must be protected and because California's public policy against sexual harassment in the workplace overrides defendants' right to discover the informant's identity. For several reasons, we disagree.[4]

---

[4] As noted above (fn. 2, *ante*) the assistant is not a "whistleblower." A whistleblower is either (a) an employee who is asked by his superior to commit a violation of statutory policy and not only refuses but also discloses the request to his employer or a governmental agency (e.g., *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25]; *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]) or (b) an employee who has been discharged for reporting to his employer or a government agency that other employees or his employer are violating the law (*John Z.* v. *Superior Court* (1991) 1 Cal.App.4th 789 [2 Cal.Rptr.2d 556]; *Harless* v. *First Nat. Bank in Fairmont* (1978) 162 W.Va. 116 [246 S.E.2d 270]). (See also *Management Inf. Tech.* v. *Alyeska Pipeline Service* (D.D.C. 1993) 151 F.R.D. 478, 481; *Sanchez* v. *Unemployment Ins.*

## A.

"Unless otherwise limited by order of the court in accordance with [the discovery statutes], any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence. Discovery may relate to the claim or defense of the party seeking discovery or of any other party to the action. Discovery may be obtained of the identity and location of persons having knowledge of any discoverable matter . . . ." (Code Civ. Proc., § 2017, subd. (a); see also *Smith* v. *Superior Court* (1961) 189 Cal.App.2d 6, 11-12 [11 Cal.Rptr. 165, 88 A.L.R.2d 650].)

## B.

We begin, therefore, with relevancy. ▮ For discovery purposes, information is relevant if it "might reasonably assist a party in *evaluating* the case, *preparing* for trial, or *facilitating* settlement . . . ." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1994) Discovery, ¶ 8:66.1, p. 8C-1.) Admissibility is *not* the test and information, unless privileged, is discoverable if it might reasonably *lead* to admissible evidence. (*Davies* v. *Superior Court* (1984) 36 Cal.3d 291, 301 [204 Cal.Rptr. 154, 682 P.2d 349].) These rules are applied liberally in favor of discovery (*Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785, 790 [183 Cal.Rptr. 810, 647 P.2d 86]), and (contrary to popular belief), fishing expeditions *are* permissible in some cases. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 385 [15 Cal.Rptr. 90, 364 P.2d 266] [although fishing may be improper or abused in some cases, that "is not of itself an indictment of the fishing expedition *per se*"].) More specifically, the identity of witnesses must be disclosed if the witness has "knowledge of any discoverable matter," including fact, opinion and any information regarding the credibility of a witness (including bias and other grounds for impeachment). (Code Civ. Proc., § 2017, subd. (a); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 8:82-8:83, pp. 8C to 4-5.)

▮ On the record before us, the relevancy of the assistant's identity is clear. First, the "assistant" may not exist at all—Gonzalez may have invented him so she would not have to admit that *she* took the photographs

*Appeals Bd.* (1984) 36 Cal.3d 575, 588 [205 Cal.Rptr. 501, 685 P.2d 61] [employees complained to government agencies concerning possible misuse of government funds]; *Palmateer* v. *International Harvester Co.* (1981) 85 Ill.2d 124 [52 Ill.Dec. 13, 421 N.E.2d 876] [employee reported coworker's criminal activity to law enforcement and agreed to assist investigation]; *Sheets* v. *Teddy's Frosted Foods, Inc.* (1980) 179 Conn. 471 [427 A.2d 385] [employee reported possible violation of state food and drug law to superiors].) Gonzalez's assistant did not speak out to anyone. He stole evidence and gave it to Gonzalez. (See also Comment, *Protecting the Private Sector At Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy* (1977) 1977 Wis. L.Rev. 777.)

from Sergeant Harvey's file. Second, although defendants are assuming the assistant is not only an employee but, more specifically, a supervisor, we have no evidence one way or the other. If Gonzalez arranged for an outsider to have access to defendants' files, defendants are entitled to know who it was. Third, the assistant is the only person (other than Gonzalez) who can say whether it was his idea to take the photographs from Detective Harvey's file or whether Gonzalez put him up to it. At a minimum, this information is relevant to Gonzalez's credibility.[5]

Moreover, if she establishes sexual harassment, evidence of Gonzalez's misconduct (by her own theft or by encouraging her assistant's theft) would be admissible to limit the kind and quantity of damages recoverable in this action. (*McKennon* v. *Nashville Banner Pub. Co.* (1995) 513 U.S. __ [130 L.Ed.2d 852, 115 S.Ct. 879] [although an employee's wrongdoing will not bar her action when her suit "serves important public purposes," her wrongdoing does bear on the specific remedy to be ordered and the amount of damages she may recover]; on damages in sexual harassment actions generally, see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 215, 221 [185 Cal.Rptr. 270, 649 P.2d 912]; *Kelly-Zurian* v. *Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409-410 [27 Cal.Rptr.2d 457]; *Bihun* v. *AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 995-997 [16 Cal.Rptr.2d 787], disapproved on another point in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

## C.

No recognized privilege applies to this case. ■ As used in Code of Civil Procedure section 2017, subdivision (a), "privileged" means the constitutional and statutory privileges (self-incrimination [Evid. Code, § 940], attorney-client [*id.*, § 950 et seq.], spousal communication [*id.*, § 980], doctor-patient [*id.*, §§ 990 et seq., 1010 et seq.], clergyman-penitent (*id.*, § 1030 et seq.), sexual assault victim-counselor [*id.*, § 1035 et seq.], and official information [*id.*, § 1040]) and the "qualified privileges" for such things as trade secrets (*id.*, § 1060 et seq.), police personnel files (*id.*, § 1043) and tax returns (*Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621]), none of which apply in this situation.

■ The result is the same if we treat Gonzalez's assistant as a "whistleblower"—because there is no such thing as a "whistleblower's privilege."

---

[5]Assuming he exists, we can think of several questions defendants would want to ask the assistant. Whose idea was it to take the photographs from the file? If it was your idea, did you tell Gonzalez what you were going to do before you did it? If so, what was her response? If not, what did she say when you gave her the pictures? What is your relationship to Gonzalez? How did you know where to find the photographs? When you removed the photographs from the file, what else was in the file? Who else knows you took the photographs?

When confidentiality is provided to a whistleblower, it is not on the basis of a privacy privilege but rather as a matter of public policy, usually according to standards best described as an undefined conditional privilege. (See e.g., *John Z.* v. *Superior Court, supra,* 1 Cal.App.4th 789 [relying on Code Civ. Proc., § 2025, subd. (i), which authorizes a protective order to prevent unwarranted embarrassment or oppression of a deponent]; *U.S.* v. *Garde* (D.D.C. 1987) 673 F.Supp. 604, 606 [relying on the First Amendment's protection of associational rights to protect the identity of whistleblowers]; see also *Alyeska Pipeline Service Co.* v. *U.S. E.P.A.* (1988) 856 F.2d 309, 311-313 [272 App.D.C. 355] [applying a similar analysis to documents used in an investigation].)[6] In our case, the assistant's identity is protected, if at all, as a matter of public policy.

## D.

■ Where there is a prima facie showing of relevance, the party opposing disclosure on the basis of a conditional privilege has the burden to establish the preliminary facts essential to the claim of privilege. (Cf. *Bridgestone/Firestone, Inc.* v. *Superior Court* (1992) 7 Cal.App.4th 1384, 1391 [9 Cal.Rptr.2d 709] [a party relying on the qualified privilege afforded to trade secrets who refuses to respond to a discovery request must establish the existence of a trade secret and his ownership thereof, at which point the burden shifts to the party seeking disclosure to show why the information is necessary to a fair resolution of the lawsuit].)

Gonzalez's reliance on *Britt* v. *Superior Court, supra,* 20 Cal.3d at page 859, is misplaced. In *Britt,* where the defendant's right to discovery of the plaintiffs' political affiliations turned on an implied waiver of the plaintiffs' "constitutional right of associational privacy," the court imposed upon the defendant the burden to show the information sought was "directly relevant" to the case. (*Ibid.*) In our case, we are not dealing with a constitutional right to privacy. And, of course, in *Britt* the question itself demonstrated the existence of the right to privacy. Stated differently, to ask for a party's political affiliation is, necessarily, to implicate that party's First Amendment associational rights.

But where, as here, the question calls for information which may or may not be privileged, the party asserting the privilege must establish its application *before* the interrogator is required to show more than basic discovery

---

[6]For this reason, Gonzalez's reliance on the privacy cases is misplaced. (E.g., *Pacific-Union Club* v. *Superior Court* (1991) 232 Cal.App.3d 60 [283 Cal.Rptr. 287] [involving the Franchise Tax Board's efforts to discover a private club's membership list so it could investigate whether the members improperly deducted club-related expenses]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766] [in an action by homeowners against an airport, the airport wanted to discover the plaintiffs' political affiliations].)

relevance. (See *Alpha Beta Co.* v. *Superior Court* (1984) 157 Cal.App.3d 818, 824-825 [203 Cal.Rptr. 752] [party claiming the attorney-client privilege must prove the attorney-client relationship existed at the time the requested information was communicated and, only after that showing is made, does the burden shift to the other party to show waiver or some other exception]; see also *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 302-303 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310] [when discovery is sought of confidential files, "a declaration that public interest would suffer by disclosure is of no avail when [the] prerequisite [that the particular communication was made in confidence] does not exist[, and s]ince the claim of privilege is an affirmative objection to a request for material otherwise discoverable, the burden of proving the same is on the party making that claim"].)

 Gonzalez, of course, offered no evidence at all to support her claim of privilege. Instead, she simply argues that, because Defendants took disciplinary action against her, we must assume they will retaliate against her assistant because he helped her by giving her the photographs. She conveniently ignores the fact that she has presented no evidence at all to establish her assistant's status (as noted, we do not know if he is a coworker), nor does she ever say what sort of retaliation she fears. There is not even any evidence that the photographs were given to her in confidence, with the expectation that the assistant's identity would not be disclosed. (Cf. Evid. Code, § 1041, subds. (b), (c).) The most that can be said based upon evidence (rather than mere speculation) is that, at about the same time Gonzalez began making complaints about sexual harassment but before she filed suit, defendants asked her for information about a theft from a police department file. She refused to answer, discipline was recommended and she was "compelled" to quit because of stress.

It does not help Gonzalez if we assume her assistant is a former coworker still employed by defendants, because her arguments fail to distinguish between (a) defendants' recognized legitimate interests in protecting themselves from a dishonest employee and (b) the possibility of their improper retaliatory discipline or discharge of the same employee. We are not the first ones to note this distinction. As the United States Supreme Court recently explained in *McKennon* v. *Nashville Banner Pub. Co.*, *supra*, 513 U.S. __ [130 L.Ed.2d 852, 862, 115 S.Ct. 879, 886], ". . . we must recognize the duality between the legitimate interests of the employer and the important claims of the employee" and "take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing. [¶] . . . Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information . . . ."

■ Indeed, even where a statute protects a whistleblower from retaliation (e.g., title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.), the employee's action in opposition to discrimination "must be lawful and reasonable. For example, employers may discipline or discharge an employee who copies the employer's confidential documents even though the copies are to be used in opposing the employer's discriminatory practices. Employees' statutory rights to oppose discrimination are not to be construed as a general license to be insubordinate." (Malin, *Protecting the Whistleblower From Retaliatory Discharge* (1982) 16 U. Mich. J. L. Ref. 277, 292-295, citing *Silver* v. *KCA, Inc.* (9th Cir. 1978) 586 F.2d 138 [employer may fire an employee who forced a coworker to apologize to another employee for a racial slur]; *Jefferies* v. *Harris Cty. Community Action Ass'n* (5th Cir. 1980) 615 F.2d 1025; *Green* v. *McDonnell Douglas Corporation* (8th Cir. 1972) 463 F.2d 337, vacated on other grounds, 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817]; *King* v. *Illinois Bell Tel. Co.* (N.D.Ill. 1978) 476 F.Supp. 495; *Monteiro* v. *Poole Silver Co.* (1st Cir. 1980) 615 F.2d 4.)

Instead of addressing these issues, Gonzalez attempts to sidestep her failure of proof by contending the strong public policies opposing sexual harassment in the workplace and protecting whistleblowers, without more, support her refusal to disclose the name of her assistant. We disagree.

1.

Gonzalez's generalities are beyond dispute.[7] ■ It is true, as she points out, that California has a strong public policy against sexual harassment. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 90 [276 Cal.Rptr. 130, 801 P.2d 373]; Gov. Code, § 12920 et seq.) In some situations, it is also true, as Gonzalez claims, that it is against public policy for an employer to retaliate against an employee for lending assistance to a coworker's efforts to stop sexual harassment. (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1096 [4 Cal.Rptr.2d 874, 824 P.2d 680] [it is against public policy for an employer to constructively discharge an employee in retaliation for his refusal to testify untruthfully in favor of the employer in proceedings involving a coworker's sexual harassment claim because this is, in effect, a discharge based upon the employee's refusal to commit a criminal act to further the employer's interests]; *Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467, 477 [4 Cal.Rptr.2d 522] [an employer may not fire an employee because he opposed discrimination against a fellow employee, even if he was mistaken and there was no discrimination].)

---

[7]They are also all based upon an assumption (on her part, not ours) that her assistant is a former coworker still employed by defendants.

 These cases do not support Gonzalez's claim. Assuming the existence of sexual harassment, no case has ever held that a plaintiff who sues her former employer to vindicate public policy has a right to keep confidential the identity of a coworker (or anyone else) who, by theft from the employer, provides information to the plaintiff.[8] In *Gantt*, the employer constructively discharged the plaintiff after he refused the employer's request to change his testimony at a hearing involving a coworker's claim of sexual harassment. (*Gantt* v. *Sentry Insurance*, *supra*, 1 Cal.4th at p. 1088.) In *Flait*, the employer discharged the plaintiff after he attempted to stop one subordinate from sexually harassing another subordinate. (*Flait* v. *North American Watch Corp.*, *supra*, 3 Cal.App.4th at p. 472.) These cases do not involve illegal conduct or the violation of rules and regulations by the employees who came to the aid of their colleagues. And, of course, there is no issue in either case about the identity of the coworker.

### 2.

Gonzalez's reliance on *John Z.* v. *Superior Court*, *supra*, 1 Cal.App.4th 789, is misplaced. In *John Z.*, an informant told Pacific Gas and Electric Company that some of its contractors were receiving payment for services not actually performed. The informant had no direct proof of his allegations but PG&E conducted an investigation, confirmed the tip and then sued the contractors for fraud. (*Id.* at p. 791.) During discovery, the contractors learned about the informant and asked for his identity. PG&E refused to answer. On the motion of one of the contractors, the trial court ordered disclosure. The Court of Appeal disagreed and, on the facts of that case, protected the informant's identity.

Without reference to any privilege or public policy, Division Three of the First District relied on the general authority of the trial court "to protect [a witness] from 'unwarranted annoyance, embarrassment, or oppression.'" (*John Z.* v. *Superior Court*, *supra*, 1 Cal.App.4th at p. 791.)[9] After noting that *the informant had filed a sealed declaration* describing the *threat to his life*, the court went on: "This authority necessarily includes the authority to

---

[8]We have intentionally avoided criminal cases in which an informant's identity is sought and cases involving news media sources, two areas which have developed rules peculiar to those situations. In all other areas, however, we have been unable to find any case in which the identity of an informant who acquired his information illegally has been protected from disclosure. (See, for example, *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614 [262 Cal.Rptr. 842] ["To establish a prima facie case of retaliation, a plaintiff must show that she *engaged in a protected activity*, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two"].)

[9]The court cited Code of Civil Procedure section 2025, subdivision (i), which permits a witness to apply for a protective order before, during or after a deposition, and permits the court, for good cause shown, to make any order "that justice requires to protect [the deponent]

protect the identity of an *informant whose safety would be jeopardized* by disclosure. But the informant's interests must be balanced against the litigant's need for the information. Thus, the question before us is whether the court abused its discretion when it impliedly found that [the contractor's] showing of [his] need to know [the] informant's identity outweighed [the] informant's showing of danger from disclosure. . . .

"In a sealed . . . brief, [the contractor] presents his reasons for disclosure of [the] informant's identity. Briefly, [the contractor] suggests that [the] informant may know something negative about PG&E, such as that it failed to fully mitigate damage or that it expressed a desire to put one or more of the contractors out of business. . . . [The i]nformant might have evidence to support the libel allegations in [the contractor's] cross-complaint, or [the contractor's] action for breach of the covenant of good faith and fair dealing. [¶] We . . . find [the contractor's reasons] far from compelling. . . . *[The contractor] merely seeks a short cut through normal discovery procedures. Had PG&E investigated without a tip or had [the] informant presented his/her tip anonymously, [the contractor] would be no worse off than he is now.* He has no compelling need to learn who blew the whistle.

"*[The i]nformant presented a four-page declaration reciting the threat he/she received from one of the contractors and his/her reason for treating the threat as serious.* The court's memorandum of decision gave reasons for finding that the declaration did not make the prerequisite showing of good cause for a protective order [but t]he court did not find that the threat was not made or was inherently unbelievable. Rather, the court merely discounted the seriousness of the danger. [¶] The factors mentioned by the court, which do undercut somewhat the danger, might have tipped the balance for disclosure had [the contractor] presented a compelling reason for disclosure. But with [the contractor's] meager showing, the court abused its discretion in failing to protect [the] informant from the danger inherent in disclosing his/her identity. The danger, though somewhat speculative, was based on a communicated threat which was taken seriously by its recipient. The court was in no position to totally discount it. . . ." (*John Z.* v. *Superior Court, supra,* 1 Cal.App.4th at pp. 791-792, italics added.)

There are three significant differences between *John Z.* and our case. *First,* the informant in *John Z.* was a traditional whistleblower—he notified PG&E that some of its contractors were being paid for work they had not performed. As we have explained, Gonzalez's assistant was not a whistleblower. *Second,* there is not a hint that the informant in *John Z.* was guilty of

---

from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. . . ."

any wrongdoing of any kind. In our case, it is undisputed that Gonzalez's assistant stole the photographs from Sergeant Harvey's file and there are, therefore, "compelling reasons for disclosure." *Third*, the informant in *John Z.* filed a lengthy declaration detailing the threats to his life. In our case, Gonzalez did not file a declaration from her assistant or even her own declaration. Instead, she simply speculates that her assistant, if identified, will be disciplined. For these reasons, *John Z.* lends no support to Gonzalez's position.

## E.

For the foregoing reasons, we hold that Gonzalez did not satisfy her burden of proof. We reject her claimed concern about what will happen to her assistant if his identity is disclosed, on the ground that mere speculation is insufficient to invoke a conditional privilege where, as here, the person whose identity is sought (1) may or may not be a former coworker still employed by defendants but, even assuming he is, (2) he is not someone who has spoken out about improper practices, either to an employer or to a regulatory agency but (3) is, instead, someone who has wrongfully appropriated evidence from his employer's files and turned it over to a coworker and (4) is not, therefore, a true whistleblower.

### DISPOSITION

The petition is denied.

Ortega, J., concurred.

**SPENCER, P. J.**—I reluctantly concur in the result. I agree generally with the substance of the lead opinion, which is that the identity of petitioner's "assistant" is discoverable and petitioner has failed to provide sufficient information to permit this court to ascertain that there is a real threat of improper retaliation to her source. While the identity of petitioner's "assistant" is not itself relevant to her charges, an opportunity to depose that individual could lead to evidence relevant to petitioner's credibility. That is enough—barely—to make it discoverable. (Code Civ. Proc., § 2017, subd. (a).)

I do feel, however, that the lead opinion makes some unwarranted conclusions, i.e., that department property was stolen from Sergeant Harvey's file and petitioner's "assistant" therefore "wrongfully appropriated evidence from his employer's files and turned it over to a coworker." (Maj. opn. *ante*, at p. 1553.) It is equally possible that the photographs are not evidence of

anything but petitioner's sexual harassment, do not belong to the department or Sergeant Harvey and were being hidden in the files to protect someone else until Sergeant Harvey or this other person had a chance to destroy them. If the "assistant" rescued these photographs from certain or likely destruction and the photographs belonged neither to the department nor to Sergeant Harvey, then their removal was not necessarily wrongful. (See maj. opn. *ante*, at p. 1550.)

I stress that petitioner has not presented any evidence which would establish the foregoing scenario. My concern is that the lead opinion uses terms such as "theft of the employer's property" and "wrongfully appropriated evidence" without couching them in the language of possibilities rather than absolutes.

As long as there is a reasonable possibility that a fellow departmental employee stole departmental property from a file and as long as questioning of petitioner's "assistant" might produce admissible evidence relevant to petitioner's credibility, real parties have a fairly compelling reason for seeking the disclosure of the "assistant's" identity. Accordingly, in order to prevail, petitioner needed to produce sealed evidence which would show real parties' interests to be something less than compelling and/or to establish a genuine threat of unwarranted oppression if that person's identity is revealed. (*John Z.* v. *Superior Court* (1991) 1 Cal.App.4th 789, 791-792 [2 Cal.Rptr.2d 556].)

Petitioner has not established the existence of her "assistant," let alone that this person is an employee of the police department. Moreover, she has not presented any evidence which would support the conclusion that this person could not be punished legitimately for theft of department property and would, instead, be subjected to wrongful retaliation for aiding petitioner in establishing her harassment claim.

The internal memorandum upon which petitioner relies simply demonstrates that the department assumes it not only was a departmental employee who removed the photographs but was a supervisory employee, and that the department views this as theft of its property and an extreme breach of trust. Punishment of a theft and a breach of trust would be appropriate. The memorandum therefore does not establish either the existence of an "assistant" or that the department would engage in *improper* retaliation/punishment of the person who took the photographs from the file.

Petitioner might have provided sealed declarations to the trial court to establish that removal of the photographs was not a wrongful act and/or that

severe and improper retaliation against the "assistant" (whose identity should be revealed under seal) was substantially likely. (See, e.g., *John Z.* v. *Superior Court*, *supra*, 1 Cal.App.4th at pp. 791-792.) That is, she might have sought to establish that the department would not be punishing a theft from its files but would be punishing sympathetic alliance with petitioner's antiharassment cause by jeopardizing the "assistant's" safety or subjecting him/her to unwarranted oppression. (*Ibid.*) Regrettably, she failed to do so.

Inasmuch as petitioner failed to carry her burden of proof, I have no choice other than to concur in the result.