[No. B098731. Second Dist., Div. Two. Apr. 29, 1996.]

DEPARTMENT OF TOXIC SUBSTANCES CONTROL, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LEACH OIL COMPANY, INC., Real Party in Interest.

## COUNSEL

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Donald A. Robinson and James R. Potter, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

OPINION

FUKUTO, J.—The Department of Toxic Substances Control (Department) has petitioned this court for an extraordinary writ of mandate directing the superior court to vacate its order denying the Department's application for an administrative inspection warrant.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Department is the regulatory agency charged with enforcing the Hazardous Waste Control Law (HWCL). (Health & Saf. Code, § 25100 et seq.)

On December 31, 1993, real party in interest, Leach Oil Company, Inc. (Leach Oil) received a grant of interim status[1] to operate as an existing hazardous facility. It is authorized to treat, store and/or dispose of used oil, a "hazardous waste" under California law. (Health & Saf. Code, § 25250.4.) Leach Oil earlier operated as an authorized used oil recycling facility.

On November 2, 1995, the Department filed suit against Leach Oil alleging violations of the HWCL dating back to 1989, and seeking civil penalties, injunctive relief and recovery of investigative costs.

On November 8, 1995, employees of the Department arrived at Leach Oil's facility to conduct an annual inspection, the purpose of which was to determine whether Leach Oil was in compliance with the HWCL. The facility manager denied entry to the premises, and informed the Department it would consent to a subsequent inspection only if Leach Oil's counsel could be present. The Department informed Leach Oil that it had no objection to the attendance of Leach Oil's counsel at such an inspection, but that the Department could not agree to waive its ability to conduct unannounced inspections.

On November 14, 1995, the Department applied to the superior court for an administrative inspection warrant pursuant to Code of Civil Procedure section 1822.50 et seq.[2] The superior court denied the application stating that the Department's regularly scheduled inspection would constitute "free discovery" in the pending lawsuit, and that the Department could gain access to

---

[1]"Interim status" is an authorization granted by the Department which allows a facility to continue to operate pending review and decision on the facility's formal permit application. (See Cal. Code Regs., tit. 22, § 66260.10.)

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

and inspect the facility only through the civil discovery process.[3] This petition for writ of mandate followed.

## II. DISCUSSION

### A. *Contention*

■ The Department contends the superior court's "denial of the inspection warrant . . . is clearly erroneous as a matter of law."[4]

### B. *Administrative Inspection Warrants*

■ *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727] (*Camara*), sets the standard for administrative inspection warrants. In that case, a city health inspector entered an apartment building to make a routine annual inspection for possible violations of the city's housing code. The inspector was informed by the apartment manager that Camara was using the rear of his leasehold as a personal residence. The inspector, claiming that the building's occupancy permit did not allow residential use of the ground floor, confronted Camara and demanded that he permit an inspection of the premises. Camara refused to allow the inspection because the inspector lacked a search warrant. (*Id.* at pp. 526-527 [18 L.Ed.2d at pp. 933-934].) The court held that such searches without a warrant violate the Fourth Amendment. (*Id.* at p. 540 [18 L.Ed.2d at p. 942].) In so doing, the court stated that "[i]n cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness. To apply this standard, it is obviously necessary first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen." (*Id.* at pp. 534-535 [18 L.Ed.2d at p. 939].) In *Camara*, the inspection programs at issue were "aimed at securing city-wide compliance with minimum physical standards for private property." (*Id.* at p. 535 [18 L.Ed.2d at p. 939].) The primary governmental interest at stake was "to prevent even the unintentional development of conditions which are hazardous to public health and safety." (*Ibid.*) The court concluded that "[i]n determining whether a particular inspection is reasonable—and thus in determining

---

[3]The court stated, "I think you're going to have to work through that civil case, since you filed a civil case. That's the only fair thing, I think. [¶] I mean, otherwise, you know, government agencies get out of hand when they've got all these powers—these various alternative powers, and it develops into a very unfair situation."

[4]The Department suggests that because Leach Oil is engaged in a pervasively regulated business its premises may be inspected without a warrant. This issue is not before us.

whether there is probable cause to issue a warrant for that inspection—the need for the inspection must be weighed in terms of these reasonable goals of code enforcement." (*Ibid.*) The court, acknowledging that "there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails," concluded area code-enforcement inspections are reasonable. (*Id.* at pp. 536-537 [18 L.Ed.2d at p. 940].) The court went on to state, "Having concluded that the area inspection is a 'reasonable' search of private property within the meaning of the Fourth Amendment, it is obvious that 'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building . . . or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling. It has been suggested that so to vary the probable cause test from the standard applied in criminal cases would be to authorize a 'synthetic search warrant' and thereby to lessen the overall protections of the Fourth Amendment. [Citation.] But we do not agree. The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant." (*Id.* at pp. 538-539 [18 L.Ed.2d at p. 941.)

In order to carry out the purposes of the HWCL, the Department is authorized "at any reasonable hour of the day," to enter and inspect a facility where "hazardous wastes are stored, handled, processed, disposed of, or being treated to recover resources." (Health & Saf. Code, § 25185, subd. (a)(1).) Section 25185 specifically authorizes the Department to obtain, if necessary, an administrative inspection warrant pursuant to section 1822.50 et seq. (Health & Saf. Code, § 25185, subd. (a).) Section 1822.50 is coexistent with the rule established in *Camara.*

Under section 1822.51 an inspection warrant "shall be issued upon cause . . . supported by an affidavit, particularly describing . . . the purpose for which the inspection is made." Under section 1822.52: "Cause shall be deemed to exist if either reasonable legislative or administrative standards for conducting a routine or area inspection are satisfied with respect to the particular place, dwelling, structure, premises, or vehicle, or there is reason to believe that a condition of nonconformity exists with respect to the particular place, dwelling, structure, premises or vehicle."

(1)  *Public Interest*

Our Legislature enacted the HWCL to protect California's citizens and its environment from the unreasonable threat posed by the improper treatment, storage and disposal of hazardous waste. (Health & Saf. Code, § 25100.) In so doing, our legislators emphasized the long-term threat to public health and to air and water quality posed by mishandled hazardous wastes. (See Health & Saf. Code, § 25100, subds. (a), (b).) Regarding used oil, the Legislature found that "significant quantities of used oil are wastefully disposed of or improperly used by means which pollute the water, land, and air, and endanger the public health, safety, and welfare." (Health & Saf. Code, § 25250, subd. (a); see also § 25250.4.)  ■  Our Legislature then declared that in order to provide the type of protection our citizens and environment deserve, ". . . it is in the public interest to establish regulations and incentives which ensure that the generators of hazardous waste employ technology and management practices for the safe handling, treatment, recycling, and destruction of their hazardous wastes prior to disposal." (Health & Saf. Code, § 25101, subd. (a).) "[W]hat constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis. [Citations.]" (*Board of Supervisors* v. *Dolan* (1975) 45 Cal.App.3d 237, 243 [119 Cal.Rptr. 347].)

(2)  *Reasonable Legislative or Administrative Standards*

■  Our Legislature has declared that "[h]azardous waste laws must be enforced by qualified public officials to protect the health and safety of California workers and residents as well as the environment," and that "violations must receive enforcement attention and action quickly and in relation to the severity of the offense as measured by the danger to, or potential to endanger, public health and safety and the environment." (See Historical and Statutory Notes, 40B West's Ann. Health & Saf. Code (1996 pocket supp.) § 25110.8.5, p. 91.) Enforcement cannot be accomplished without the unannounced, routine inspections authorized by Health and Safety Code section 25185.

Health and Safety Code section 25185 authorizes the Department to enter, inspect and photograph hazardous waste management facilities, to take samples of any waste materials existing on site, and inspect and copy records.[5]

Because Leach Oil operates under "interim status" and handles used oil, it is subject to additional regulations. For example, it is obligated to comply

---

[5]As a used oil facility, Leach Oil is also subject to Public Resources Code section 48661 which commands the Department to "annually inspect used oil recycling facilities."

with certain detailed requirements of chapter 15 of the Department's regulations. (See Cal. Code Regs., tit. 22, § 67800.1, subd. (c).) These regulations include training requirements, hazardous waste acceptance and testing procedures, self-inspection requirements, emergency planning, recordkeeping, and hazardous waste tank construction. (See Cal. Code Regs., tit. 22, § 66265.13 et seq.)

The foregoing regulations and legislative declarations provide ample evidence of the Legislature's intent to closely regulate and monitor hazardous waste facilities such as Leach Oil, and demonstrate that the legislative and administrative standards for conducting unannounced, routine inspections of such facilities are reasonable.

The affidavit in support of the inspection warrant specified the state code sections authorizing the Department to conduct the inspection, and described the standards for the inspection. The affidavit thus provided the necessary probable cause for the warrant to issue, pursuant to sections 1822.51 and 1822.52.[6]

### C. *Pendency of the Civil Suit*

The superior court ruled that the Department could not conduct its ordinary compliance inspection at Leach Oil as long as it had litigation pending against the company, and that the Department was required to conduct any inspection through the civil discovery process. The court's decision is flawed for several reasons.

First, the ruling would exempt the greatest part of Leach Oil's operations from regulatory oversight. The Department has set forth 14 causes of action alleging, among other things, that "[s]oil and gravel contaminated with hazardous wastes and constituents are present throughout the Leach Oil facility." Although the behavior alleged is egregious, it does not touch upon all of Leach Oil's regulatory requirements. Unless the Department is allowed to conduct its regular inspection, it will be unable to verify Leach Oil's compliance with those statutory and regulatory requirements that are not part of the pending litigation.

Second, the conducting of an administrative inspection through the civil discovery process would effectively be limited by section 2017, subdivision

---

[6]The Department submitted in support of its application for an inspection warrant the declaration of an employee described as a "hazardous substance scientist" who detailed previous violations of the HWCL at Leach Oil. This information demonstrated "cause" as that term is used in section 1822.52 since it established a "reason to believe that a condition of nonconformity" existed with respect to Leach Oil.

(a) which provides that only information "relevant" to the subject matter involved in the pending action may be discovered. (See *Gonzalez* v. *Superior Court* (1995) 33 Cal.App.4th 1539, 1546 [39 Cal.Rptr.2d 896].) Imposing such a limitation on the Department would prevent it from conducting the comprehensive review of the facility, its financial records, etc., contemplated by the Legislature.

Third, the superior court's ruling would foreclose an unannounced inspection. Requiring the Department to proceed by "civil discovery" means the Department would be required to conduct any inspection pursuant to section 2031. Rather than showing up unannounced, the Department's representatives would henceforth be required to give at least 30 days' notice. (§ 2031, subd. (c)(2).) The Department conducts its annual regulatory inspection without advance notice to the facility. Such "surprise inspections" enable the Department to get an accurate picture of each facility's operations. Even advance notice of a few hours may be sufficient time for a hazardous waste management facility to straighten up, to update records, and to otherwise conceal or eliminate violations. If an inspection is to "be effective and serve as a credible deterrent, unannounced . . . inspections are essential." (*United States* v. *Biswell* (1972) 406 U.S. 311, 316 [32 L.Ed.2d 87, 92, 92 S.Ct. 1593] [recognizing that a gun dealer could quickly conceal gun control law violations].)

The court in *In re Stanley Plating Co., Inc.* (D.Conn. 1986) 637 F.Supp. 71 passed on a problem similar to the one facing this court. There, an interim status hazardous waste management facility sought to prevent the United States Environmental Protection Agency (EPA) from conducting its usual compliance evaluation inspection. Stanley Plating argued that because it was a defendant in a civil enforcement action filed by the EPA, the agency could gain access to the facility only through a motion to inspect under rule 34(b) of the Federal Rules of Civil Procedure (28 U.S.C.).[7] The district court held that "[t]here is nothing in the statutes that suggests any such limitation being

---

[7]Federal Rules of Civil Procedure, rule 34(b) provides as follows: "Procedure. The request shall set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts. Without leave of court or written stipulation, a request may not be served before the time specified in Rule 26(d). [¶] The party upon whom the request is served shall serve a written response within 30 days after the service of the request. A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties, subject to Rule 29. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts. The party submitting the request

so intended by Congress. Further, there is no logic to such a restriction." (*In re Stanley Plating Co., Inc., supra,* 637 F.Supp. at p. 72.)

Important public policy concerns are at issue here. The Department inspects hazardous facilities annually and, in the course of so doing, routinely discovers violations of the hazardous waste requirements. Typically, the Department files litigation only against those facilities that are intransigent or whose violations significantly threaten health and safety. If the court's order were the general rule, it is precisely those facilities with a record of enforcement violations which would receive the least surveillance. A hazardous waste management facility whose non compliance warrants civil litigation should not be rewarded by restrictions on the enforcement agency's ability to monitor compliance with public health and environmental requirements during the litigation. Nothing in the HWCL, or the Code of Civil Procedure, suggests otherwise.

## III. DISPOSITION

This is a proper case for issuance of a peremptory writ in the first instance. (§ 1008; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) The matter having been fully briefed, issuance of an alternative writ would add nothing to the exposition of the issues.

Let a peremptory writ of mandate issue directing respondent to vacate its order of November 14, 1995, denying petitioner's application for an administrative inspection warrant, and to enter a new and different order granting the application. The stay imposed on January 24, 1996, is vacated.

Boren, P. J., and Zebrowski, J., concurred.

---

may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested. [¶] A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."