The COOL MOOSE PARTY and Robert J. Healey, Jr., Individually and as Chairperson of the Cool Moose Party

v.

STATE OF RHODE ISLAND, the Rhode Island Board of Elections and the Secretary of State of Rhode Island.

C.A. No. 96–514–T.

United States District Court,
D. Rhode Island.

May 27, 1998.

118

Robert J. Healey, Warren, RI, for Plaintiffs.

Thomas A. Palombo, Attorney General's Office, Providence, for State of Rhode Island.

Robert E. Craven, Giannini & Craven, Providence, RI, for Rhode Island Board of Elections.

Katherine A. Merolla, Pucci, Goldin & Merolla, Providence, RI, for Secretary of State of Rhode Island.

## MEMORANDUM AND ORDER

TORRES, District Judge.

The Cool Moose Party (CMP) and Robert J. Healey, Jr. (Healey), its chairperson,

brought this action, pursuant to 42 U.S.C. § 1983, to declare "the Rhode Island primary laws" unconstitutional and to enjoin the State of Rhode Island, the Rhode Island Board of Elections and the Secretary of State of Rhode Island from enforcing them. The case is presently before the Court for consideration of cross motions for summary judgment filed by the plaintiffs and the defendants.

The issues presented are whether statutory provisions that prohibit members of one political party from voting in another party's primary; prevent "write-in" voting at primary elections and require voters to identify the primary in which they wish to vote impermissibly infringe on rights to freedom of association and/or privacy that are protected by the First and Fourteenth Amendments and whether such provisions violate the "Qualifications Clause" contained in Article I, Section 2, Clause 1 of the United States Constitution and the Seventeenth Amendment. Because I find that the prohibition against cross-party voting is unconstitutional to the extent that it prevents the CMP from inviting members of other parties to participate in CMP primaries; and, because I further find that the challenged "primary laws" pass constitutional muster in all other respects, the motions for summary judgment are granted in part and denied in part.

### Background

The CMP is a political party within the meaning of R.I. Gen. Laws § 17–1–2(9) because its gubernatorial candidate received more than 5% of the votes cast at the last general election.[1] Healey is the chairperson of the CMP and one of two declared candidates for the party's nomination for State Representative.

The plaintiffs seek a declaration that "the Rhode Island primary laws" are unconstitutional, but they have identified only two statutory provisions as the subject of their challenge. That lack of specificity is compounded by the fact that some of the plain-

tiffs' arguments are difficult to decipher and do not clearly state the precise nature of the constitutional violations alleged. In any event, it appears that the questions presented are:

1. Whether R.I. Gen. Laws § 17–15–6, which requires political parties to select their nominees by means of primary elections, violates CMP members' right to freedom of association by preventing them from selecting candidates at a caucus open only to CMP members.

2. Whether R.I. Gen. Laws § 17–15–24, which prohibits members of one political party from voting in another party's primary, violates the plaintiffs' right to freedom of association because it prevents the CMP from allowing members of other parties to participate in the selection of CMP candidates.

3. Whether R.I. Gen. Laws § 17–15–24 also violates the "Qualifications Clause's" requirement that electors for federal office have the same qualifications as those of electors for state offices because the CMP does not nominate candidates for federal office.

4. Whether some unspecified Rhode Island statute (presumably R.I. Gen. Laws § 17–19–31) that prohibits write-in voting at primary elections also violates the "Qualifications Clause."

5. Whether some unspecified Rhode Island statute requiring voters to "publicly" identify the party primary in which they wish to vote violates the plaintiffs' First and Fourteenth Amendment right to privacy.

### Discussion

 It is well established that the right to vote and the right to associate for political purposes are fundamental rights protected by the First and Fourteenth Amendments. *Burdick v. Takushi,* 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992); *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986). However, those rights

---

1. Section 17–1–2(9)(i) defines "political party" as "any political organization which at the next preceding general election for the election of general officers nominated a candidate for gover-

nor, and whose candidate for governor at the election polled at least five percent (5%) of the entire vote cast in the state for governor."

are not absolute. *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063. The Constitution permits states to regulate "[t]he Times, Places and Manner" of elections, U.S. Const. art. 1, § 4, cl. 1, and the Supreme Court has recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063 (quoting *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714, (1974)).

 Since election laws invariably impose some limitation on the right to vote and the right to associate for political purposes, that fact, alone, does not render them unconstitutional. *Id.* at 433, 112 S.Ct. at 2063; *see Gill v. Rhode Island,* 933 F.Supp. 151, 154 (D.R.I.1996), *aff'd,* 107 F.3d 1 (1st Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 340, 139 L.Ed.2d 264 (1997). Determining whether a particular regulation impermissibly infringes on protected rights requires consideration of "the character and magnitude of the asserted injury" to those rights; "the precise interests put forward by the State as justifications for the burden imposed" and an assessment of "the legitimacy and strength of each of those interests" as well as "the extent to which those interests make it necessary to burden the plaintiff's rights." *Tashjian,* 479 U.S. at 214, 107 S.Ct. at 548 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)). When protected rights are severely burdened, the regulation is subject to strict scrutiny and must be narrowly drawn to advance a compelling State interest. *Gill,* 933 F.Supp. at 154. On the other hand, when the burden is not great, the regulation will pass Constitutional muster if it imposes only "reasonable, nondiscriminatory restrictions" that serve "important regulatory interests." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, ——, 117 S.Ct. 1364, 1370, 137 L.Ed.2d 589 (1997) (quoting *Burdick,* 504 U.S. at 434, 112 S.Ct. at 2063); *Gill,* 933 F.Supp. at 154–55. In short, "the level of scrutiny to be applied corresponds roughly to the degree to which a challenged regulation encumbers First and Fourteenth Amendment rights." *Werme v. Merrill,* 84 F.3d 479, 483 (1st Cir.1996).

## I. *R.I. Gen. Laws § 17–15–6*

 Section § 17–15–6 requires that, when more than one candidate seeks the nomination of a "political party" for a particular office, the nominee must be selected by a primary election rather than by a party convention or caucus. Since the bylaws of the CMP provide for its nominees to be selected at a caucus in which only party members may participate, the CMP contends that the statute impermissibly infringes on the associational rights of its members including the right to determine how nominees are chosen. The plaintiffs also argue that, if the State cannot require primaries, it cannot, lawfully, expend public funds to conduct them.

The argument that states may not mandate primaries was rejected by the Supreme Court in *American Party of Texas v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974). In that case, the Court stated that it is constitutionally permissible for a State to require political parties to select their nominees by means of primary elections in order to insure the fairness and integrity of the process. *Id.* As the Ninth Circuit has observed, the requirement of primary elections serves a compelling state interest since it is designed "to take political nominations out of the smoke-filled rooms of party bosses and give them to the voters." *Lightfoot v. Eu,* 964 F.2d 865, 872 (9th Cir. 1992), *cert. denied,* 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 673 (1993).

 In addition to blunting the argument that § 17–15–6 unconstitutionally mandates primaries, *White* makes it unnecessary to address the argument that the State may not bear the expense of conducting the primaries. *White* holds, and the plaintiffs concede, that when state law mandates that primaries be held, political parties should not be made to bear the expense of conducting them. *White,* 415 U.S. at 792–94, 94 S.Ct. at 1311–12.

## II. *R.I. Gen. Laws § 17–15–24*

Section § 17–15–24, in essence, prevents registered members and candidates of one

political party from voting in another party's primary. The CMP asserts that this provision, too, violates the associational rights of its members by depriving them of the power to determine who can participate in the selection of CMP nominees. Specifically, the CMP argues that the statute frustrates their desire to allow members of other parties to vote in the CMP primary. In addition, Healey contends that the statutory prohibition violates the "Qualifications Clause" by precluding him, as a CMP candidate, from voting in the primary of another party that, unlike the CMP, nominates candidates for federal office.

### A. The rights of association

The CMP's argument that § 17–15–24 infringes on its right to allow members of other parties to vote in CMP primaries appears to be inconsistent with its own bylaw that calls for nominees to be selected at party caucuses in which only party members may participate. However, despite that inconsistency, it is clear that, although a State may require a political party to select its candidates by means of a primary election, it may not prevent the party from allowing members of other parties to participate in the primary.

In *Tashjian*, a Connecticut statute requiring voters in a party primary to be registered members of that party notwithstanding a Republican Party rule permitting non-members to participate, was held unconstitutional. *Tashjian*, 479 U.S. at 225, 107 S.Ct. at 554. The Supreme Court noted that the freedom to associate for political purposes "necessarily presupposes the freedom to identify the people who constitute the association." *Id.* at 214, 107 S.Ct. at 548–49 (quoting *Democratic Party of the United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981)). It found that, by limiting the group of voters that the Republican Party could invite to participate in the process of selecting its candidates, the State infringed on that freedom and that such infringement was not justified by any substantial State interest. *Id.* at 215–16, 225, 107 S.Ct. at 549, 554.

Although the Court recognized Connecticut's legitimate interest in curtailing "raiding" (i.e., a practice under which members of one party seek to improperly influence the selection of another party's candidates by voting in that party's primary), it found that, under the circumstances, this interest was not implicated. *Id.* at 219, 107 S.Ct. at 551. More specifically, the Court drew a distinction between cases in which a party favors allowing non-members to participate in its primary and cases in which non-members seek to participate despite the party's opposition. In the former class of cases, a statutory prohibition interferes with the party members' associational rights and is not justified by any State interest. On the other hand, in the latter class of cases, restrictions on the non-members' ability to participate are outweighed by the party's associational right to determine its own membership and by the State's interest in protecting both that right and the integrity of the electoral process. *Id.* at 215 n. 6, 219, 107 S.Ct. at 549 n. 6, 551.

The defendants in this case attempt to distinguish *Tashjian* by arguing that § 17–15–24 imposes only a minimal burden on a voter's right to participate in the party primary of his or her choice because Rhode Island law allows unaffiliated voters to vote in any primary and permits registered members of a party to disaffiliate up to ninety days before the primary. There are two flaws in that argument.

First, a virtually identical argument was rejected in *Tashjian*. There, the Court found that, notwithstanding similar provisions in Connecticut's election laws, Connecticut's version of § 17–15–24 had more than a *de minimus* impact on First Amendment rights and, therefore, had to be justified by something more than the State's power to regulate elections. *Id.* at 216 n. 7, 107 S.Ct. at 549 n. 7.

In addition, the issue in this case is not whether the prohibition against members of one party voting in another party's primary impermissibly burdens a *voter's* rights. Rather, it is whether the prohibition impermissibly burdens a political party's right to invite voters to participate in its primary

**122**

regardless of their party affiliations. As already noted, *Tashjian* holds that it does.

In short, to the extent that R.I. Gen. Laws § 17–15–24 prohibits any otherwise eligible voter from voting in the CMP primary when the CMP bylaws would permit them to do so, the statute unconstitutionally infringes on the CMP members' freedom of association.

### B. *The "Qualifications Clause"*

▮ The "Qualifications Clause" requires that electors in each state who vote for United States Representatives and Senators "shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. art. 1, § 2, cl. 1; *see also* U.S. Const. amend. XVII.

▮ The purpose of the Qualifications Clause is to prevent voters who are eligible to vote in state elections from being disqualified from participating in federal elections. *Tashjian,* 479 U.S. at 228, 107 S.Ct. at 556. It is applicable to primary elections as well as general elections. *Id.* at 227, 107 S.Ct. at 555.

In this case, Healey contends that § 17–5–24 violates the "Qualifications Clause" because the CMP does not nominate candidates for federal office and the statute prevents him, as a CMP member, from voting in the primary of another party that does nominate federal candidates, thereby making him ineligible to vote for congressional candidates even though he is eligible to vote for candidates for state offices. That argument is unpersuasive for several reasons.

First, it rests on the premise that Healey's associational rights entitle him to vote in another party's primary even though he is committed to the philosophies and policies of the CMP. That premise misapprehends the nature of political parties and the role of primary elections and it ignores the associational rights of members of other parties.

▮ A political party is a group of individuals who share certain political ideas and who band together for the purpose of nominating and electing candidates who will implement those ideas through governmental action. *See Nader v. Schaffer,* 417 F.Supp. 837, 844 (D.Conn.), *aff'd,* 429 U.S. 989, 97

S.Ct. 516, 50 L.Ed.2d 602 (1976). The right to engage in such activity is part of the party members' constitutionally protected freedom of association. *Cousins v. Wigoda,* 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975); *Kusper v. Pontikes,* 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973). Indeed, as already noted, the desire to protect that right is one of the factors underlying a State's interest in curtailing "raiding" by prohibiting non-members from voting in a party's primary against the party's wishes.

▮ Since primaries are an integral part of the candidate selection process, the right to nominate candidates also includes a right to limit primary participation to individuals who demonstrate at least some modest commitment to the party and its objectives. *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971); *see also Nader,* 417 F.Supp. at 847 ("a state legitimately may condition one's participation in a party's nominating process on some showing of loyalty to that party"). In this respect, a primary differs from a general election in which a voter, regardless of party affiliation, is free to cast a ballot for any candidate.

Thus, Healey's asserted right to vote in the primaries of other parties whose philosophies he does not share, while remaining a candidate for nomination by the competing CMP, ignores the right possessed by the members of those other parties to determine with whom they will associate and is outweighed by the State's interest in protecting that right and preserving the integrity of the selection process.

▮ Healey's argument also is based on a misunderstanding of the "Qualifications Clause." The "Qualifications Clause" does not "require that voter qualifications, such as party membership, in primaries for federal office must be absolutely symmetrical with those pertaining to primaries for state legislative office." *Tashjian,* 479 U.S. at 227, 107 S.Ct. at 555. Rather, the Qualifications Clause "is satisfied if all those qualified to participate in the selection of members of the more numerous branch of the state legislature are also qualified to participate in the

election of Senators and Members of the House of Representatives." *Id.* at 229, 107 S.Ct. at 556.

In this case, Healey is "qualified" to vote for both federal and state candidates and he is qualified to the same extent as any other eligible voter. Healey's anticipated inability to vote for federal candidates is not attributable to § 17-5-24; but, rather, it is self-imposed. It stems from the fact that the party with which he has chosen to affiliate has opted not to nominate candidates for federal office. The law allows Healey to vote in the primary of any other party that does nominate federal candidates by simply disaffiliating up to ninety days before the primary.

In short, § 17-5-24 does not establish different qualifications for participating in primaries for state and federal offices. On the contrary, it establishes uniform qualifications for participating in all party primaries, including those in which federal candidates are nominated, by demonstrating a minimal commitment to the party in question or, more accurately, by indicating, at least, a temporary absence of commitment to a competing party. The fact that choices made by a particular political party or an individual voter cause § 17-5-24 to have an asymmetrical impact on voting for state and federal offices does not render it unconstitutional. Nor can a voter who exercises his right to affiliate with a political party that declines to nominate candidates for federal office "eat his cake and have it" by also claiming a right to participate in the selection process of competing parties that do nominate federal candidates.

## III. *R.I. Gen. Laws § 17-19-31*

Although neither the complaint nor the memoranda submitted by the plaintiffs identify the statute that deprives Healey of the "option to write in any federal candidate," it appears that the provision at issue is contained in § 17-19-31 which prevents votes from being cast at primary elections for individuals whose names do not appear on the ballot.[2]

The Supreme Court has held, that although statutory prohibitions against write-in voting may limit the field of candidates from which a voter may select, it does not unconstitutionally infringe on the voter's freedom of choice or association where there is ample opportunity for a candidate of the voter's choice to appear on the ballot. *Burdick,* 504 U.S. at 441-42, 112 S.Ct. at 2067. When State law provides candidates with easy access to the ballot, any burden imposed by prohibiting write-in voting is a very limited one that is borne only by those who fail to avail themselves of that access. *Id.* at 436-37, 112 S.Ct. at 2065.

In this case, Healey does not contend that Rhode Island's requirements for listing a candidate on a primary ballot are unreasonably burdensome. Indeed, Rhode Island's requirements are very similar to the Hawaii requirements which *Burdick* found to "provide[ ] for easy access to the ballot." *Id.* at 436, 112 S.Ct. at 2065.

Instead, Healey, apparently, seeks to circumvent the holding in *Burdick* by basing his challenge on the "Qualifications Clause." Healey's argument is somewhat vague but appears to be that, because the CMP does not nominate candidates for federal office, the statutory prohibition against write-in voting prevents him from voting in federal elections.

That argument is similar to and suffers from the same flaws as the argument that § 17-15-24 violates the "Qualifications Clause." As already noted, Healey's "disenfranchisement" from voting to nominate federal candidates results from his choice to affiliate with the CMP and the CMP's choice not to nominate candidates for federal office. Nothing in Rhode Island's primary laws would prevent Healey from voting for any federal candidates vying for the CMP's nomination. Nor is there anything that would prevent Healey from voting in the primary of another party that nominates federal candidates if he disaffiliates from the CMP.

**2.** Section 17-19-31 provides, in pertinent part: "Ballots voted for any person whose name does not appear on the ballot as a nominated candidate for office are herein referred to as irregular ballots ... [N]o irregular ballots shall be counted at primaries."

In addition, the burden imposed on Healey in not being able to cast a vote for anyone he chooses without regard to the requirements governing nomination and listing of candidates on the ballot is outweighed by the State's interest in providing an orderly system for the selection of candidates. *See id.* at 439–40, 112 S.Ct. at 2066–67.

Finally, § 17–19–31 does not establish different qualifications for voting for state and federal offices. In fact, it does not prescribe any qualifications for voting. It simply limits the field of candidates from which qualified voters may select to those candidates listed on the ballot in the party primary of the voters' choice. Moreover, it applies equally to all offices, state and federal.

## IV. *The "Public Declaration Requirement"*

The complaint alleges that, in order to participate in a primary election, "voters must declare party affiliation" and that this requirement "den[ies] the right to vote to those unwilling to publicly announce their political propensities." Once again, the plaintiffs do not identify the specific statute responsible for this alleged violation. The gist of the plaintiffs' argument seems to be that requiring a voter to identify the party primary in which he or she desires to vote violates the voter's right to privacy and imposes a significant burden on associational rights because it exposes the voter to harassment. The plaintiffs also assert that the State has no compelling interest in requiring such a declaration because "new technology" exists that would allow a voter to choose a party primary after entering the voting booth. This argument, too, is deficient in several respects.

■ The Supreme Court has held that the freedom of association guaranteed by the First Amendment may include a privacy interest in not revealing the identities of other association members when disclosure would subject members to harassment or chill the recruitment of new members. *NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). In such circumstances, a State may require disclosure only if the disclosure is narrowly tailored to achieve a compelling State interest. *Id.* at

466, 78 S.Ct. at 1174. Thus, determining whether it is constitutional for a state to require an individual to disclose his or her associations, is a two-step process. First, the plaintiff must make a *prima facie* showing that his or her First Amendment rights have been infringed, usually by demonstrating "that enforcement of the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of associational rights." *United States v. Comley,* 890 F.2d 539, 544 (1st Cir.1989). Second, once the *prima facie* showing is made, the burden shifts to the State to show that the disclosure serves a compelling interest and that there are no less restrictive means of serving that interest. *Id.*

■ In this case, the plaintiffs have failed to make the required *prima facie* showing. Their vague allegations that members of the CMP are "seen as going against the grain" and that revealing their party affiliation will "result in harassment" are unsupported by any facts and fall far short of establishing the level of harassment that must be demonstrated. In *Nader,* the Court rejected a virtually identical argument, holding:

> Plaintiffs also claim that the public nature of enrollment violates their right to privacy of association by potentially subjecting them to harassment because of their affiliations with a party. It is insufficient, however, for plaintiffs merely to raise the spectre of harassment; instead, they must make a detailed factual showing of actual threats or incidents of harassment.

*Nader,* 417 F.Supp. at 844; *see also Comley,* 890 F.2d at 544 ("[G]eneral allegations of harassment fall short of the solid, uncontroverted evidence of actual harassment that has existed in those cases where the Supreme Court has found violations of the right to freedom of association.").

Furthermore, even if the "new technology" described by the plaintiffs exists, the State has a compelling interest in requiring voters to identify the primary in which they wish to vote. Allowing a voter to secretly select which party's primary he or she votes in would permit members of one party to vote

in another party's primary. As already noted, that is the type of "raiding" that states have a legitimate interest in preventing in order to protect the associational rights of the other party's members.

### Conclusion

For all of the foregoing reasons, both the plaintiffs' and defendants' motions for summary judgment are granted in part and denied in part and the Clerk is directed to enter judgment as follows:

1. R.I. Gen. Laws § 17–15–24 is declared unconstitutional to the extent that it prohibits any otherwise eligible voter from voting in a party primary when the bylaws of that party would permit them to do so.

2. All of the plaintiffs' remaining claims are denied and dismissed.

IT IS SO ORDERED.