United States Court of Appeals
 For the First Circuit

No. 98-1875

 THE COOL MOOSE PARTY, ET AL.,

 Plaintiffs, Appellants,

 v.

 STATE OF RHODE ISLAND, ET AL.,

 Defendants, Appellees.

No. 98-1874

 THE COOL MOOSE PARTY, ET AL.,

 Plaintiffs, Appellees,

 v.

 STATE OF RHODE ISLAND, ET AL.,

 Defendants, Appellants.

 APPEALS FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ernest C. Torres, U.S. District Judge]

 Before

 Stahl, Circuit Judge,
 Magill,* Senior Circuit Judge,
 and Lipez, Circuit Judge.

 Robert J. Healey, Jr., Esq. for The Cool Moose Party and for
himself, individually.
 Thomas A. Palombo, Special Assistant Attorney General and
Katherine A. Merolla, with whom Robert E. Craven was on brief for
the State of Rhode Island, the Secretary of State for the State of
Rhode Island, and The Rhode Island Board of Elections.

August 25, 1999

 *Of the Eighth Circuit, sitting by designation. LIPEZ, Circuit Judge. In September 1996, the Cool Moose
Party ("CMP"), a Rhode Island political party, and Robert J.
Healey, Jr. individually and in his capacity as CMP's chairperson
(referred to collectively herein as "CMP"), filed suit in federal
district court pursuant to 42 U.S.C. 1983 seeking declaratory and
injunctive relief from various provisions of Rhode Island's primary
election laws, R.I. Gen. Laws 17-15-1 to 17-15-44. After the
parties filed cross-motions for summary judgment on a stipulated
record, the district court ruled, inter alia, that R.I. Gen. Laws
17-15-6, which requires political parties to select their
nominees by means of primary election, is constitutional; and that
R.I. Gen. Laws 17-15-24, which prohibits members of one political
party from voting in another party's primary, is unconstitutional
to the extent that it prohibits such voters from participating in
a party primary when the bylaws of that party would permit such
participation. Both parties now appeal the adverse judgments
against them. We affirm. 
The Questions Presented
We note at the outset that CMP's challenges to Rhode
Island's primary election statutes both in the district court and
on appeal contain ambiguities which limit our ability to address
its contentions and restrict the scope of our analysis. As the
district court observed, CMP's pleadings and arguments "are
difficult to decipher and do not clearly state the precise nature
of the constitutional violations alleged." Cool Moose Party v.
Rhode Island, 6 F. Supp. 2d 116, 119 (D.R.I. 1998). 
Notwithstanding this lack of clarity, the district court identified
five issues that appeared to be raised by CMP, see id., two of
which are appealed here: 
 (1) Whether R.I. Gen. Laws 17-15-6, which
requires political parties to select their
nominees by means of primary elections,
violates CMP members' right to freedom of
association by preventing them from selecting
candidates at a caucus open only to CMP
members.

 (2) Whether R.I. Gen. Laws 17-15-24, which
prohibits members of one political party from
voting in another party's primary, violates
the plaintiffs' right to freedom of
association because it prevents CMP from
allowing members of other parties to
participate in the selection of CMP
candidates.

Id. On appeal the parties apparently agree with the district
court's characterization of the issues presented, and we proceed
accordingly. We review a district court's grant of summary
judgment de novo. See Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir.
1999).

The Constitutional Background
The freedom to associate with others for the advancement
of political beliefs and ideas is a form of "orderly group
activity" protected by the First and Fourteenth Amendments, and
"[t]he right to associate with the political party of one's choice
is an integral part of this basic constitutional freedom." Kusper
v. Pontikes, 414 U.S. 51, 56-57 (1973); see Tashjian v. Republican
Party of Conn., 479 U.S. 208, 214 (1986); Elrod v. Burns, 427 U.S.
347, 356 (1976); NAACP v. Alabama ex. rel. Patterson, 357 U.S. 449,
460 (1958). Those associational rights, however, "are necessarily
subject to qualification if elections are to be run fairly and
effectively." Munro v. Socialist Workers Party, 479 U.S. 189, 193
(1986); see Timmons v. Twin Cities Area New Party, 117 S. Ct. 1364,
1369-70 (1997); Storer v. Brown, 415 U.S. 724, 730 (1974). Thus,
states may enact laws that are necessary to ensure the integrity,
fairness, and honesty of the election process, see Eu v. San
Francisco County Democratic Cent. Comm., 489 U.S. 214, 231 (1989),
even though such laws may abridge a party's associational rights by
interfering with its internal affairs or its ability to garner
support and members, see, e.g., Dunn v. Blumstein, 405 U.S. 300,
343-44 (1972) (residence requirement); Oregon v. Mitchell, 400 U.S.
112, 118 (1970) (age minimum); Kramer v. Union Free Sch. Dist. No.
15, 395 U.S. 621, 625 (1969) (citizenship requirement). 
Faced with the inherent tension between a political
party's right of association and a state's power to regulate
elections, the Supreme Court has endorsed a flexible standard of
review applicable to a challenged provision corresponding roughly
to the degree to which the provision affects First and Fourteenth
Amendment rights:
 When deciding whether a state election law
violates the First and Fourteenth Amendment
associational rights, we weigh the character 
and magnitude of the burden the State's rule
imposes on those rights against the interests
the State contends justify that burden, and
consider the extent to which the State's
concerns make the burden necessary. 
Regulations imposing severe burdens on
plaintiffs' rights must be narrowly tailored
and advance a compelling state interest. 
Lesser burdens, however, trigger less exacting
review, and a State's important regulatory
interests will usually be enough to justify
reasonable, nondiscriminatory restrictions. 

Timmons, 117 S. Ct. at 1370 (internal quotation marks and citations
omitted); see also Werme v. Merrill, 84 F.3d 479, 483 (1st Cir.
1996). Under this formulation, "no bright line separates
permissible election-related regulation from unconstitutional
infringements on First Amendment freedoms." Timmons, 117 S. Ct. at
1370. 
The Primary Requirement
CMP contends that R.I. Gen. Laws 17-15-6, which
requires that parties select their nominees by primary election
rather than by party convention or caucus, is unconstitutional.
Although we have considerable difficulty deciphering CMP's
argument, CMP on appeal appears to accept the proposition that
states may require parties to select their nominees by primary
election without violating the parties' First Amendment
associational rights. See, e.g., Reply Br. at 6. Rather, CMP now
makes a vague equal protection challenge to the primary
requirement, contending that although Rhode Island "may mandate a
primary, . . . it must not have disparate outcomes as to major or
minor parties." Id. In particular, CMP argues that primary
elections have a "disproportionate . . . impact [on small parties]
in terms of raiding." In other words, CMP argues that its small
membership could more easily be overcome by a determined group of
raiders than could a larger, more established party, and that this
"disproportionate impact" renders the primary requirement
unconstitutional. 
Whatever the merits of CMP's "disparate impact" argument
may be, the district court did not address it, and for good reason.
There is no indication in the record that CMP, in challenging R.I.
Gen. Laws 17-15-6 before the district court, ever raised its
novel "disparate impact" argument with even minimal clarity. 
Although the confused pleadings below suggest a highly generalized
challenge to Rhode Island's semi-closed primary system, and
although CMP's memorandum in support of its motion for summary
judgment notes that the small size of the party makes it an easy
target for raiders, there is certainly no coherent articulation of
the "disparate impact" rationale as a basis for invalidating the
statute. To the contrary, the pleadings below suggest that CMP's
objection to the primary requirement was based on First Amendment
associational rights (in particular, a party's right to decide for
itself how its standard bearer will be chosen), not on equal
protection concerns. CMP's general challenge was simply
insufficient to raise the "disparate impact" challenge in the
district court, and the fact that CMP's argument would have
required factual development in the trial court makes application
of the rule of forfeiture particularly appropriate here. There are
no extraordinary circumstances in this case that would cause us to
depart from the well-established appellate rule that arguments
raised for the first time on appeal will not be considered. See
Campos-Orrego v. Rivera, 175 F.3d 89, 95 (1st Cir. 1999); Tele-
Communications, Inc. v. Comm'r of Internal Revenue, 104 F.3d 1229,
1232-33 (10th Cir. 1997). The district court's ruling on the
mandatory primary requirement will stand. 
Rhode Island's Semi-Closed Primary System 
The State contends that the district court erred by
concluding that R.I. Gen. Laws 17-15-24, which prohibits voters
registered in one party from voting in the primary of another
party, is unconstitutional to the extent that it prohibits such
voters from voting in the primary of another party whose bylaws
would permit their participation. The district court, relying on
Supreme Court authority it considered controlling, ruled that R.I.
Gen. Laws 17-15-24 unconstitutionally prevents CMP from inviting
registered voters from other parties to vote in the CMP primary. 
See Cool Moose Party, 6 F. Supp.2d at 120-22. On appeal, the State
argues that the Supreme Court case on which the district court
relied, Tashjian v. Republican Party of Connecticut, 479 U.S. 208
(1986), is distinguishable and that the statute must be upheld in
its entirety. While we agree that Tashjian is not on all fours
with the case now before us, we nonetheless conclude that the State
has failed to offer adequate justifications for R.I. Gen. Laws
17-15-24's infringement upon the associational rights of CMP.
In Tashjian, 479 U.S. 208, the Republican Party of the
State of Connecticut and several of its officials challenged a
Connecticut statute requiring voters in a party primary to be
registered members of that party, notwithstanding a Republican
party rule permitting independent voters to participate. Using the
balancing framework applicable to challenges to election laws, the
Supreme Court first observed that the "freedom to join together in
furtherance of common political beliefs 'necessarily presupposes
the freedom to identify the people who constitute the
association.'" Id. at 214 (quoting Democratic Party of United
States v. Wisconsin ex. rel. LaFollette, 450 U.S. 107, 122 (1981)). 
By hindering the party's attempts to broaden the base of public
participation in and support for its activities, the statute
burdened the party's association rights:
 The statute here places limits upon the group
of registered voters whom the Party may invite
to participate in the "basic function" of
selecting the Party's candidates. The State
thus limits the Party's associational
opportunities at the crucial juncture at which
the appeal to common principles may be
translated into concerted action, and hence
political power in the community.

Id. at 215-16. 
The Court turned next to an examination of the four
interests that were asserted by the State to justify the statute's
infringement on the party's associational rights, among which was
the interest in "protecting the integrity of the two-party system
and the responsibility of party government." Id. at 222. Although
accepting the proposition that the State may have an interest in
preserving the integrity of the electoral process, the Court
unequivocally rejected the notion that a State has any interest in
paternalistically protecting a political party from its own
(arguably) poor decisions concerning the boundaries of its
association. Because the State "'may not constitutionally
substitute its own judgment for that of the Party,'" id. at 224
(quoting Democratic Party, 450 U.S. at 123-24), the Party was free
to exercise its associational right to define its own boundaries by
inviting independent voters to participate in its primary election,
even if that decision was unwise, see id. at 225.
The Tashjian Court was careful to point out, however,
that its ruling was limited to the factual situation before it 
namely, a political party's desire to invite independent voters to
participate in its primary:
 Our holding today does not establish that
state regulation of primary voting
qualifications may never withstand challenge
by a political party or its membership. A
party seeking, for example, to open its
primary to all voters, including members of
other parties, would raise a different
combination of considerations. Under such
circumstances, the effect of one party's
broadening of participation would threaten
other parties with the disorganization effects
which the statutes in [Storer] and [Rosario]
were designed to prevent. 

Id. at 224 n.13 (emphasis added). The instant case presents
exactly the hypothetical situation contemplated by the Tashjian
footnote: CMP wishes to invite Democrats, Republicans, and other
affiliated voters to participate in its primary. Tashjian does not
purport to control such a situation, and in fact suggests that a
state may well be able to offer sufficiently weighty rationales in
support of a statute prohibiting affiliated voters from
participating in the primary of another party. 
Accordingly, the State is correct that the Tashjian case
does not necessarily render unconstitutional R.I. Gen. Laws 17-
15-24's prohibition on affiliated voters' participation in another
party's primary despite the consent of a party to that
participation. Indeed, Tashjian leaves the door open for the State
to argue that R.I. Gen. Laws 17-15-24 is necessary to prevent
distortions of the electoral process that affect not only CMP, but
also other parties or the party system generally. Curiously,
however, the State failed to make such an argument in either the
district court or on appeal.
In defending 17-15-24 before the district court, the
State apparently misunderstood the nature of CMP's challenge. 
Based on its memorandum in support of its motion for summary
judgment, it appears that the State thought CMP was only
challenging the length of time a voter must be disaffiliated from
her former party before she may vote in another party's primary 
i.e., ninety days. See R.I. Gen. Laws 17-9.1-24 (quoted supra
note 8). The State missed CMP's actual, more fundamental claim
that a state cannot prevent a party from inviting voters to
participate in its primary, irrespective of whether or when the
voters had disaffiliated from other parties. Given this
misapprehension of the nature of CMP's challenge, the State's
memorandum in support of its motion for summary judgment does not
explain the interests that the State relies upon to justify 17-
15-24's infringement on CMP's associational right to define its own
boundaries. 
The State does not do much better in its brief on appeal. 
Although it argues that this case is not controlled by Tashjian,
and cites in particular footnote 13 from that opinion, see
Tashjian, 479 U.S. at 224, n.13 (reserving the question of whether
a party seeking to open its primary to affiliated voters would
prevail), the State again fails to articulate with any clarity the
state interests that are served by 17-15-24's prohibition on a
political party's ability to invite affiliated voters to
participate in its primary. In a few sentences at the end of its
brief, the State does contend that R.I. Gen. Laws 17-15-24 is
necessary to confine voters to "a single nominating act" i.e., to
ensure that voters do not vote in the primaries of more than one
party. 
At oral argument, the State tried unsuccessfully to
articulate the interests advanced by 17-15-24. First, the State
acknowledged that Rhode Island law makes it a crime to engage in
more than one nominating act, thus rendering the State's "single
nominating act" rationale wholly unconvincing. Next, the State
argued that 17-15-24's prohibition on a political party's ability
to invite affiliated voters to participate in its primary was
justified by a concern for "raiding." We asked for clarification,
prompting this exchange with the bench:
 Q: What does party raiding mean in this
context? . . .

. . .

 A: The concern . . . is that members of one
political party seeking to disrupt the
internal workings of the other political party
and to go in and affect the choice of the
nominee of the party only for the purposes of
choosing let's say the weaker candidate will .
. . really dissolve or weaken the votes of the
actual members of the candidates [sic]. 

 Q: But [CMP is] saying don't be so
paternalistic. Let us . . . decide who will
come in to vote and who we don't want to come
in to vote. That's our associational decision
to make.

 A: Right. And the Supreme Court has said that
the states do have the ability to protect the
party from the internal workings of the party
itself. That was reiterated in Tashjian and
the most recent Timmons case. 

 Q: I thought Tashjian was very much to the
contrary on that issue.

 A: The basic right was reiterated. But
Timmons specifically addressed that and in
fact stated the state has a compelling
interest in maintaining the distinct
identities of the party and in protecting the
party from the party itself.

Through this pointed exchange, it became clear that the State's
ambiguous raiding rationale is entirely paternalistic i.e., the
State justifies 17-15-24 by saying that the statute prevents a
foolhardy party from making unwise decisions concerning the
boundaries of its association that might expose it to raiders. 
Contrary to the State's contentions at oral argument,
however, the Supreme Court has been clear in its rejection of
paternalistic justifications for infringements on a political
party's constitutional right to define the boundaries of its
association. See Tashjian, 479 U.S. at 224 (infringement on
political party's associational rights cannot be defended on ground
that "it protects the integrity of the Party from the Party
itself"); see also Eu, 489 U.S. at 227-28 ("[E]ven if a ban on
endorsements saves a political party from pursuing self-destructive
acts, that would not justify a State substituting its judgment for
that of the party."); Timmons, 117 S. Ct. at 1374 (state's strong
interest in the stability of its political systems is not "a
paternalistic license for States to protect political parties from
the consequences of their own internal disagreements"). Indeed,
when raiding has been recognized as a valid justification for a
state election law, it has been in the context of voter challenges
to election laws that inhibit registered voters' ability to invade
another party's primary without that party's consent. See, e.g.,
Kusper v. Pontikes, 414 U.S. at 59-60; Rosario, 410 U.S. at 760. 
In this case, although CMP wishes to invite voters affiliated with
other parties to participate in its primary election, the State
forbids the invitation without offering a plausible and
constitutionally permissible explanation for the prohibition.
Although we do not require "elaborate, empirical
verification of the weightiness of the State's asserted
justifications" for such a prohibition, Timmons, 117 S. Ct. at 1372
(citing Munro v. Socialist Workers Party, 479 U.S. 189, 195-96
(1986)), the State must at least articulate plausible and
constitutionally legitimate justifications. We will not invoke
justifications out of whole cloth on the State's behalf. See
Timmons, 117 S. Ct. at 1379 (Stevens, J., dissenting) (noting that
"[o]ur opinions have been explicit in their willingness to consider
only the particular interests put forward by a State to support
laws that impose any sort of burden on First Amendment rights")
(citing Anderson, 460 U.S. at 789, 817; Burdick, 504 U.S. at 434). 
Given the State's failure to articulate any legitimate interest for
the restriction of 17-15-24 on the ability of a party to invite
registered voters from other parties to participate in its primary,
we must affirm the district court's ruling. 
Affirmed.